[S. F. No. 14841. In Bank.—September 2, 1933.]

HELEN E. BEAL, Appellant, v. CARL H. BEAL, Respondent.

Robert R. Moody for Appellant.

James, Brann & Rowe and Ross & Ross for Respondent.

PRESTON, J.—Appeal from order of the San Mateo County Superior Court, modifying provisions of final decree of divorce, relating to custody of children and allowance for their support and education.

On January 23, 1928, these parties executed a written property settlement agreement whereby, after specifying the terms of property division, it was agreed that the wife should have the custody of the two minor sons of the marriage, Carlton Beal, then about thirteen years of age, and Thomas Evans Beal, then about ten years of age, the husband reserving the right to visit them at all reasonable times. It was also agreed that the husband should pay to the wife $750 monthly for the support and education of said sons; that he should require no accounting as to disposition of said payments; that in event of divorce, the decree should provide for their continuance, but, other than as set forth in said agreement, neither party should assert against the other any property claim. Lastly, said agreement provided: "Nothing in this agreement, however, shall interfere or be construed to interfere with the rights and powers of the courts of California with respect to children."

On January 27, 1928, plaintiff wife, upon grounds of extreme cruelty, secured an interlocutory decree of divorce, wherein the court adjudged said property settlement to be just, fair and equitable, and awarded custody of the sons to her, with allowance for their maintenance as above set forth. On January 28, 1929, a final judgment of divorce was entered. It ordered that the provisions of the interlocutory decree relating to custody, control, maintenance, care and education of the minors and the right of the father to visit them at all reasonable times and places "are hereby

carried into this final decree of divorce, subject to the further order of the court''.

Frequent controversies had from time to time arisen between the parties over attempts of the father to exercise his right to visit the children and he had, on occasions, invoked the aid of the court to secure orders permitting him to take the children out and to have them visit him during school vacations. In fact, on December 11, 1928, the wife was cited for contempt because of her failure to obey an order of the court permitting the father to take the sons to a Stanford-California football game and to dinner and places of amusement on nonconsecutive week-ends. Finally, in September, 1929, with the consent of both parties, the court made an order modifying the final decree of divorce by placing the elder son, Carlton, in the joint custody of the parents; leaving the younger son in the custody of the mother; relieving the father from said $750 monthly payments during the portions of the summer vacation that the children spent with him; ordering enrollment of the elder son in the Menlo School for Boys, to attend there until graduation, with rights to both parents to visit him; ordering the mother to pay his school expenses from said allowance and to permit him to rent a saddle-horse and to have $25 a month spending money; and, lastly, giving the father the right to visit the younger son and to have both children during at least one-half of the summer vacation periods.

Some three years later, on October 4, 1932, the court made its further order modifying said final decree of divorce, which is the order here appealed from. It awarded custody of both sons jointly to husband and wife. It provided that until January 1, 1933, Carlton, then recovering from a severe injury, should live with defendant at Los Angeles; that Thomas should live with plaintiff and attend the San Mateo High School; that until said date defendant should pay plaintiff $375 monthly for support of Thomas, but that he should be relieved from paying anything to plaintiff for support of Carlton. It further provided that if the parties should, on or before said January 1, 1933, file their written consent to placing said minors in a private boarding-school, to be mutually selected by them, then the children should be placed in such school, commencing with the January, 1933, term; that if no written consent should

be filed, then both children should be placed in the Menlo School for Boys at the opening of said school term, to remain in attendance there until the further order of the court; that beginning January 1, 1933, the father should pay directly to the school where the children attended, the entire expense for their tuition and living, and all incidental expenses, and should be relieved from making any payments to plaintiff for their support.

Plaintiff bases her appeal from said order upon three grounds: First, that the moving papers of defendant for modification of the decree, and the evidence presented by affidavit in support thereof, did not state facts sufficient to warrant the order; second, that a court may not arbitrarily substitute its own peculiar ideas as to the custody of minor children in place of those of the parents, without evidence of unfitness of the parents, and third, that a court may not, upon the theory of making an order beneficial to the children, make a new contract for the parents, without evidence of unfitness.

These contentions have no merit. ■ The appeal is before us upon bill of exceptions which contains lengthy affidavits and counter-affidavits, in addtion to copies of all moving papers and orders of the court made prior to the giving of the order here in question. The showing so made is abundantly sufficient to support the action of the court. ■ A finding as to the unfitness of one or both parents to have custody of the children was not essential; the application for modification was addressed to the discretion of the court (sec. 138, Civ. Code; *Guardianship of Shannon, ante,* p. 490 [23 Pac. (2d) 1020]). Admittedly the elder son, who, pursuant to the order of September, 1929, had previously attended the Menlo School for Boys, was suffering severely from injuries received in an airplane accident and, having been removed from the Stanford Hospital to the southern part of the state, was under medical care at the father's home there, and at his expense. This boy was standing on the very threshold of maturity; the younger son was also rapidly approaching that critical age when the counsel and companionship of his father would be invaluable. Admittedly also, there had been a great deal of friction between these parents in the matter of arranging for the father to see the children and the latter had contributed

directly to payment of some of their bills in addition to making the monthly allowance to plaintiff, for which he received no accounting. Properly exercising its discretion in this situation, it is apparent that the court was wisely guided by the considerations specified in section 138 of the Civil Code, to wit: "(1) By what appears to be for the best interest of the child in respect to its temporal and its mental and moral welfare. . . . (2) As between parents adversely claiming the custody, neither parent is entitled to it as of right; but other things being equal, if the child is of tender years, it should be given to the mother; if it is of an age to require education and preparation for labor and business, then to the father."

We find in this record no basis for the claim that the efforts of the father, asserted to be for the welfare of the sons, were a mere subterfuge to cloak his purpose to be relieved of the monthly payments to the mother for their support. Indeed, the court has not relieved the father from supporting the sons; it has merely ordered that the payments be made direct to the school, rather than through the mother. It is too clear for controversy that the court had power to so modify the final decree with respect to changing the custody of the children (*Van der Vliet* v. *Van der Vliet,* 200 Cal. 721 [254 Pac. 945], and cases cited), and that it had also the incidental and accompanying power to order that the payments for their support and education be made directly to the person, or school, actually furnishing such support and education. This inherent power, conferred by said section 138 of the Civil Code, was recognized in the property settlement agreement, as witness the provision thereof that "Nothing in this agreement . . . shall interfere or be construed to interfere with the rights and powers of the courts of California with respect to children." Furthermore, such authority was also expressly reserved to the court by the final decree of divorce wherein are adopted the provisions of the interlocutory decree, relating to custody, control, maintenance, care and education of the children, "subject to the further order of the court".

Cases cited by appellant, such as *Parker* v. *Parker,* 55 Cal. App. 458 [203 Pac. 420], and *Johnson* v. *Johnson,* 104 Cal. App. 283 [285 Pac. 902], involving awards of alimony against the innocent party, are not in point. The case of

*Armstrong* v. *Armstrong,* 132 Cal. App. 609 [23 Pac. (2d) 50], merely holds that the statutory power of the court to modify its decrees may not be denied where the property agreement, although incorporated in the complaint, is neither adopted by nor referred to in either interlocutory or final decree of divorce. Appellant's position seems to be that that case in effect holds that where a settlement agreement is adopted by the court in its decree, the decree is thus rested on the agreement; hence the agreement is a part of the final judgment and can only be modified in the same manner as other final judgments. But this statement, if correct, would not be applicable here for, as above set forth, both by the quoted clause of the property settlement itself and by the express language of the final decree, the court retained its authority to modify said decree with respect to matters affecting the custody of the children and their support, education and general welfare.

The judgment is affirmed.

Shenk, J., Waste, C. J., and Thompson, J., concurred.