[L. A. No. 22807. In Bank. June 16, 1955.]

DOROTHY LOUISE SWYCAFFER, Respondent, v. JOE
W. SWYCAFFER et al., Appellants.

Vernon F. Bennett in pro. per. and for Appellants.

No appearance for Respondent.

John R. Sorbo and John T. Holt as Amici Curiae on behalf of Respondent.

SHENK, J.—This is an appeal from an order modifying an annulment and custody decree.

The plaintiff, Dorothy, had been married to one Kent. She separated from Kent who commenced divorce proceedings against her in Oklahoma. Kent informed Dorothy that he was obtaining his divorce from her on July 1, 1950. Dorothy married Joe, the defendant, on July 7, 1950. At the time of that marriage Dorothy was pregnant. Kent did not secure his divorce from Dorothy until July 28, 1950. Dorothy and Joe separated on July 15, 1952. During the period they lived together a boy was born to Dorothy. Dorothy filed a complaint against Joe in the San Diego Superior Court seeking a divorce, custody of the child, and an order for the child's support. Joe answered and cross-complained. The cross-complaint sought an annulment on the ground that Dorothy was married to Kent at the time the ceremony between Dorothy and Joe was performed, and that at the time of that purported marriage Dorothy was pregnant by another man. On October 7, 1952, Dorothy with the knowledge and consent of her attorney signed a stipulation that her complaint for divorce might be withdrawn and that the action could proceed to trial on the cross-complaint for annulment as a default matter without any further notice to her. The matter was heard as uncontested on October 17, 1952. The trial judge did not read the pleadings in which Joe alleged that Dorothy was pregnant by another man at the time of their purported marriage. There was no allegation or prayer in the cross-complaint concerning the custody of the child born to Dorothy. At the hearing Vernon F. Bennett, Joe's at-

torney, produced an agreement signed by Dorothy and Joe in which Joe agreed to care for and support the child born to Dorothy and Dorothy agreed to give up all of her rights to the child as against Joe. Joe testified that a child had been born during his marriage to Dorothy and that she had consented to his having permanent custody of the boy. Nothing was mentioned concerning the child's paternity, and the only ground for annulment referred to at the hearing was Dorothy's marital status at the time of her purported marriage to Joe. The court made findings and conclusions in favor of the cross-complainant. It found that at the time of the purported marriage between Dorothy and Joe, Dorothy was married to another man; and that, at that time, Dorothy was pregnant by another man. The trial court signed a decree granting Joe an annulment and also awarding permanent custody of the child to Joe.

In December, 1952, Dorothy, through the attorney who represented her in the annulment action, John T. Holt, filed an application for an order to show cause why the annulment judgment should not be modified by striking therefrom the provision with reference to the custody of the child. The order was issued and a hearing was had before the same judge who granted the annulment decree. At that hearing Dorothy stated that she had dismissed Holt as her attorney. She asked that the action be dismissed. The court refused to dismiss it and appointed Holt as amicus curiae. Testimony was taken in which the above stated facts were established. The court then issued an order in which it reaffirmed its determination that at the time Dorothy purported to marry Joe she was married to Kent and was pregnant by another man, and that Joe was entitled to an annulment. However, the court further found that: ". . . VERNON F. BENNETT, attorney for the defendant, JOE W. SWYCAFFER, knowingly and willfully deceived and defrauded the Court herein into awarding its decree [as to the custody provisions]." The court then ordered the custody provisions stricken from the decree on the ground that the custody issue was not within the pleadings.

Joe contends that the finding that Bennett, his attorney, practiced fraud on the trial court cannot stand as a matter of law. He argues that the cross-complaint stated in several places that Dorothy was pregnant by another man; that the trial judge was charged with knowledge of the contents of the pleadings; that no statement was made in contradiction

of the pleadings at the annulment hearing, and that the trial judge improperly found that he was the victim of fraud.

Section 420 of the Code of Civil Procedure provides that: "The pleadings are the formal allegations by the parties of their respective claims and defenses, for the judgment of the court."

Dorothy stipulated that Joe might take a default judgment based upon his cross-complaint. That cross-complaint was the only pleading before the court at the time the decree was rendered. Paragraph 3 of the second cause of action of the cross-complaint alleged: "That for the purpose of inducing . . . cross-complainant to consent to said marriage and go through said marriage ceremony . . . cross-defendant falsely and fraudulently represented to . . . cross-complainant . . . that she was not pregnant by any other man and that she was physically competent to marry . . . cross-complainant and that she concealed from . . . cross-complainant her real physical condition, namely: That of pregnancy by some other man than . . . cross-complainant." Paragraph 4 of that cause of action alleged: "That . . . cross-defendant was not at said time physically competent to marry . . . cross-complainant, but was at the time of said marriage to . . . cross-complainant married to another man and was in a state of pregnancy by some other man than . . . cross-complainant." Paragraph 3 of the third cause of action of the cross-complaint alleged: "That the statistical facts required by Section 426a of the Code of Civil Procedure are as follows: . . . 5. That no children were born the issue of this marriage."

■ Under the circumstances of this case the allegations of the cross-complaint should be a sufficient record at immediate hand to advise the trial court of the facts claimed to have been fraudulently withheld or not disclosed by Bennett. Bennett was entitled to rely on the assumption that the trial court was aware of those facts in refutation of the asserted inference of fraud against him; and there is otherwise no sufficient showing of fraud on his part.

The finding of fraud against him is therefore not supported by the record and should be stricken therefrom.

It is apparent from the judgment roll in the annulment proceeding that the portion of the decree awarding custody of the child to Joe is void. ■ Section 580 of the Code of Civil Procedure provides: "The relief granted to the plaintiff, if there be no answer, cannot exceed that which he shall have demanded in his complaint. . . ." This section is ap-

plicable to relief granted upon a cross-complaint. (Code Civ. Proc., § 442.) An examination of the cross-complaint discloses that nowhere is the question of child custody mentioned. The decree recites that Joe personally appeared in the action; that Dorothy "filed her appearance"; and that she stipulated that a trial could proceed on the cross-complaint without notice to her. In *Burtnett* v. *King*, 33 Cal.2d 805, it was stated at page 808: [205 P.2d 657, 12 A.L.R.2d 333]: "It is a settled rule, and has been clearly stated in many recent authorities, that a default judgment by the court that exceeds the demand or gives relief where no demand is made therefor is void as in excess of the court's jurisdiction. . . . The essence of the policy underlying section 580 of the Code of Civil Procedure, *supra*, is that in default cases, defendant must be given notice of what judgment may be taken against him—a policy underlying all precepts of jurisprudence and protected by our constitutions. If a judgment other than that which is demanded is taken against him, he has been deprived of his day in court—a right to a hearing on the matter adjudicated."

Joe contends, however, that the matter of custody is so germane to the issue of annulment that a defendant must anticipate that an award of custody would be made. He argues that child custody is analogous to alimony and support orders. (See *Bowman* v. *Bowman,* 29 Cal.2d 808 [178 P.2d 751, 170 A.L.R. 246]; *Miller* v. *Superior Court*, 9 Cal.2d 733 [72 P.2d 868];*Karlslyst* v. *Frazier,* 213 Cal. 377 [2 P.2d 362]; *Parker* v. *Parker,* 203 Cal. 787 [266 P. 283]; *Cohen* v. *Cohen,* 150 Cal. 99 [88 P. 267].) These cases are analyzed in detail in *Burtnett* v. *King, supra,* 33 Cal.2d 805, and need not be reexamined here. Suffice it to say that the award of custody is of such independent importance that a defaulting defendant is entitled to conclude that child custody will not be determined unless specifically included within the prayer. Especially is this true, where as in the present case, the complaint or cross-complaint on which the relief is granted contains an express allegation that there are no children of the marriage and that the child in question is not in fact the child of the marriage.

 Nor do Civil Code, sections 84 and 138, confer power on the superior court to make the award here in question. Section 84 provides: "A judgment of nullity of marriage does not affect the legitimacy of children conceived or born before the judgment, and the court may during the pendency of

the action, or at the time the judgment is rendered or at any time thereafter make such order for the custody, care, education, maintenance and support of such children during their minority as may seem necessary or proper. . . ." Section 138 as amended in 1951 similarly provides: "In actions for divorce or for separate maintenance the court may, during the pendency of the action, or at the final hearing or at any time thereafter during the minority of any of the children of the marriage, make such order for the custody of such minor children as may seem necessary or proper and may at any time modify or vacate the same." These provisions must be deemed to confer jurisdiction generally with regard to the matters to which they relate. They do not affect Code of Civil Procedure, section 580, *supra*, in such a way as to confer jurisdiction to grant the custody of children where the matter of custody is not included within the pleadings. █ Moreover, even if sections 84 and 138 were so construed as to repeal Code of Civil Procedure, section 580, by implication, that construction could not apply to the present case because the child here involved is neither the child of the parties (§ 84) nor the child of the marriage (§ 138).

█ It is apparent from the facts above set forth that the portion of the annulment decree awarding the custody of the child to Joe was in excess of the relief demanded in the cross-complaint and is void. Dorothy could therefore properly attack that portion of the decree in this proceeding.

The trial court found in this proceeding that: ". . . it had no power of jurisdiction [in the annulment action] to award the child referred to herein to . . . Joe . . . for the further reason that . . . said child was not an issue within the pleadings of the above case . . ." This finding is justified by the record and is sufficient to support the order.

The findings concerning the alleged fraud of the attorney Vernon F. Bennett are stricken from the record. (Code Civ. Proc., § 956a.) The conclusion of the trial court that the custody portions of the annulment decree are ineffective is correct. The order of modification is affirmed.

Gibson, C. J., Carter, J., Traynor, J., and Schauer, J., concurred.

Spence, J., concurred in the judgment.