[Civ. No. 1130. Fifth Dist. Feb. 18, 1970.]

RUTH M. CLARKE, Plaintiff and Appellant, v.
FRANK CLARKE, Defendant and Respondent.

## Counsel

Lerrigo, Thuesen & Thompson and C. Richard Walters for Plaintiff and Appellant.

Crowe, Mitchell, Hurlbutt, Clevenger & Long and James H. Clevenger for Defendant and Respondent.

## Opinion

**COAKLEY, J.**—In December 1965, a final judgment of divorce was entered in which the appellant was granted custody of sons, Michael and Timothy, then ages 15 and 10, respectively. Respondent was given "liberal" visitation rights, including Friday evenings and one month each summer. He was also ordered to pay appellant $250 per month alimony, and $175 per month child support for each child. A few months after the final decree was entered, appellant and the boys moved to Las Vegas, Nevada. They were completely successful in keeping their whereabouts a secret from respondent. Respondent's letters, cards, and gifts to the boys, mailed to their former residence in Woodlake, were returned unopened and marked "Refused." Both Michael and appellant acknowledged their parts in returning respondent's letters, cards, and gifts. Appellant stated that one of her purposes in moving to Nevada was to prevent respondent from exercising his visitation rights. In June 1968, after the appellant and the boys returned to Woodlake, appellant wrote respondent that Michael was working, and would not be able to live with him for a month during the summer. She did not suggest an alternative period. Respondent replied that he would withhold the usual $175 monthly payment for Michael for the month of July. Nine days later, without further communication, appellant filed a motion to hold respondent in contempt. She included two other requests in her

motion, viz, complete termination of visitation rights and an increase of approximately $4,000 per year in child support for Michael's college education, to bring Michael's yearly support to $5,658. The grounds for terminating visitation rights were alleged to be the boys' fear of their father, and his failure to exercise his visitation rights for two years. Respondent countered with a motion to terminate alimony.

The hearing lasted a full day, following which the court made a minute order containing these provisions: (1) dismissing the contempt matter upon defendant's paying plaintiff $175 previously due and unpaid; (2) terminating alimony payments forthwith; (3) payment by defendant of plaintiff's attorney's fee in the sum of $75, the same to be increased to $250 if Michael goes to live with his father and remains for at least a period of 30 days; (4) child support payments shall terminate forthwith providing "defendant is willing and stands ready to receive said minors into his home and be directly responsible for their support." Defendant and Pearl Clarke, his wife, promptly filed their written declarations expressing willingness to receive the defendant's two boys into their home and to assume direct responsibility for their support. The minute order concludes with this paragraph:

> "The issue of custody is not before the Court. Support is. Hence, the form of this order."

This appeal is basically from parts (3) and (4) of the order of modification, *supra*.

Appellant takes the position (1) that notwithstanding the court's statement that custody was not an issue, the order is in fact a custody order, because its purpose and effect is to change custody of the boys from appellant to respondent by the device of cutting off support completely if the boys elect to live with appellant; and (2) that the issue of custody was not raised by the pleadings, and was not litigated; therefore, the court lacked jurisdiction to make an order the effect of which was to change custody.

It is respondent's position that by appellant's motion to terminate visitation rights, and for an increase in Michael's support payments to permit him to attend the college of his choice, appellant placed in issue not just the narrow issues of visitation and support but all matters affecting "the care, welfare, legal custody, physical custody, control, visitation rights, education and support of the two minor children of the parties." Technically this is true.[1] But, for the reasons discussed hereinbelow, custody was not an issue.

---

[1]Visitation has traditionally been treated as an aspect of custody. The Civil Code, prior to the adoption of The Family Law Act effective January 1, 1970, did not use

Had either party, or the court, made it clear at the outset or even during the hearing when the opportunity to offer proof on such issue remained, our decision might well have been different.

It is not necessary to a decision herein, and accordingly we refrain from discussing the complex and sometimes confused question of jurisdiction (13 Cal.Jur.2d, Courts, § 48, p. 528). Nor do we discuss the authorities cited by the respondent for the propositions that the primary consideration in a child custody proceeding is what is the best interest of the child, and that the court is given a wide discretion which will not be disturbed in the absence of manifest abuse. That is the law. (See Civ. Code, § 138; *Sanchez v. Sanchez,* 55 Cal.2d 118 [10 Cal.Rptr. 261, 358 P.2d 533]; *Holsinger v. Holsinger,* 44 Cal.2d 132 [279 P.2d 961]; *Clarke v. Clarke,* 35 Cal.2d 259 [217 P.2d 401]; *Newell v. Newell,* 146 Cal.App.2d 166 [303 P.2d 839].) But it begs the question. The questions for decisions are: (1) is the order appealed from, in fact, a custody order though called a support order by the court, and (2) if so, was custody an issue in the case? The court expressly said it was not.

Neither party requested a change of custody in his or her pleadings, witnesses were not examined for that purpose, and no mention of a change of custody was made in the colloquy between court and counsel. Nor did respondent request either the elimination, or reduction, of child support for either son, either in his pleadings or by oral request of the court. It is a fair assumption from the record that the parties and counsel were mutually surprised by the form and substance of the order. Yet, the order has the practical effect of placing the boys in their father's home and subject to his control, or, in the alternative, they suffer the complete loss of their father's support. We hold that that part of the order goes beyond the issues litigated and is void insofar as it exceeds those issues (*In re Wren,* 48 Cal.2d 159, 163 [308 P.2d 329]; see also *Swycaffer v. Swycaffer,* 44 Cal.2d 689 [285 P.2d 1], and *Gerardo v. Gerardo,* 114 Cal.App.2d 371, 375 [250 P.2d 276]).[2]

---

the term visitation. Under the new act, the subject of visitation is found under the heading "Custody of Children" (see Civ. Code, title 4, §§ 4600, 4601).

See *Frizzel v. Frizzell,* 158 Cal.App.2d 652, 655-656 [323 P.2d 188], in which the court held that a petition "For Instructions of Court Relative to Education of Child" in legal effect, is one for modification of the decree in reference to custody and control. (See *Beal v. Beal,* 218 Cal. 755 [24 P.2d 768].)

[2]*Swycaffer* and *Gerardo* are distinguishable, but both stand for the proposition that where the pleadings give no indication that custody is an issue, and the court makes an order on the subject contrary to anything indicated in the pleadings, the order is void and the party against whom the order is made must be given an opportunity to be heard.

We also hold that the court abused its discretion in eliminating all child support unless the boys lived with their father. Examination of the reporter's transcript discloses that virtually the entire hearing was devoted to establishing that by her conduct appellant had forfeited her right to alimony. The conduct complained of included (1) her wilful and complete frustration of that provision of the final decree which granted respondent the right of liberal visitation, including the right to have the boys with him on Friday evenings and for one month during summer vacation; and (2) the appellant's role, if not authorship, of a questionnaire filled with scurrilous and degrading innuendoes directly concerning respondent. The questionnaire was circulated in the community in which the parties lived at the time the respondent was a candidate for the school board. The court, on abundant evidence, found that appellant was the author of the questionnaire, stating that "no one else had [the] motive, knowledge or vindictiveness to publish it." The court added, "Plaintiff was being less than candid with the Court in regard thereto." This is an understatement. The court also found that appellant "has been poisoning [the minds of] her sons against defendant." This, too, is amply supported by the evidence, both by the appellant's effort to do so and her success in that endeavor. Michael's self-serving statement of fear of his father was not corroborated. His choice of an eastern university without consulting his father, though expecting him to pay $5,658 a year therefor, turned out to be ill-considered. The actions and attitudes of the boys showed a total lack of cooperation with, and disrespect for, their father.

■ On the basis of the conduct summarized above, the court held that the appellant had forfeited her right to alimony. We fully agree, and, in not contesting that part of the order, appellant appears to accept the fact that she had, indeed, forfeited her right to alimony by her conduct. We concur. (*Williams* v. *Williams,* 103 Cal.App.2d 276 [229 P.2d 830].)

The court did not stop with punishing appellant for her conduct. The order goes substantially further and denies the boys all support unless they elect to live with their father. ■ "It is the welfare of the child, not the shortcoming of the respective parents, which is determinative. (*Holsinger* v. *Holsinger,* 44 Cal.2d 132, 135 [279 P.2d 961]; *Young* v. *Young,* 117 Cal.App.2d 735, 738 [256 P.2d 1009].) In deciding where custody of children shall lie, the courts are not engaged in a disciplinary proceeding to punish parents for their weaknesses as individuals nor to reward the unoffending parents for any wrong suffered by the sins of the other." (*Newell* v. *Newell, supra,* 146 Cal.App.2d 166, 179; see *Washburn* v. *Washburn,* 49 Cal.App.2d 581, 588 [122 P.2d 96].)

■ There was evidence that respondent's income had been reduced somewhat as a result of the scurrilous attack on his character, which the

appellant had authored, and that respondent had remarried and was now supporting a wife and her three minor children. However, as noted, respondent made no request for either the elimination or reduction of child support, and the evidence falls far short of establishing that respondent was unable to continue to provide reasonable support for the boys. Thus, the order was not only not within the issues litigated, but it lacked evidentiary support and was an abuse of discretion.

■ If, as respondent urges, the order was justified under the court's broad power to make and to modify its orders "by what appears to be for the best interests of the child," and, "if the child is of an age to require education . . . then custody should be given to the father," (Civ. Code, § 138) our answer is that no one in the courtroom was aware that custody was an issue, and that issue was not litigated, except technically to the extent that visitation and education fall into the broad concept of custody. (See fn. 1, *supra*.) For that reason the court's order goes beyond the issues and to that extent it is void. (*In re Wren, supra,* 48 Cal.2d 159, 163; *Swycaffer* v. *Swycaffer, supra,* 44 Cal.2d 689, and *Gerardo* v. *Gerardo, supra,* 114 Cal.App.2d 371, 375.)

■ The court's order for attorney's fees is equally unusual. Its purpose escapes us, unless it was to encourage counsel to use his persuasive powers to induce Michael to spend 30 days in his father's home. We hold that it was an abuse of the court's discretion. Because appellant's motion was vexatious and almost completely without merit,[3] the court would not have abused its discretion if it had denied appellant any attorney's fees. (*McMahan* v. *McMahan,* 130 Cal.App.2d 736, 739 [279 P.2d 767].) But to fix the fee on the basis of counsel's success in inducing Michael to spend 30 days in his father's home has no relation to the merits of appellant's case, to the time which might be involved in attempting to persuade Michael

---

[3]Appellant's motion was vexatious in two particulars: Even though the court made a conditional contempt order with reference to the July payment of $175 for Michael's support, the fact is that respondent had every right to withhold the payment. Under the decree, he was entitled to Michael's custody for one month each summer during which he would be relieved of paying the $175. Appellant advised respondent that Michael was working and would not live with his father. She suggested no alternative and it was apparent to respondent, as it is to this court, that appellant and Michael had no intention of having Michael spend a month with his father. Under the final decree and these circumstances, respondent acted properly in withholding payment. In cooperating with Michael in not spending a month in respondent's home, appellant was the party in contempt, as she was in secreting the whereabout of the boys for two years. (*Rosin* v. *Superior Court,* 181 Cal.App.2d 486 [5 Cal.Rptr. 421].) Thus, her motion re ̀contempt and termination of visitation rights was totally without merit and vexatious. While a motion for increased support for purposes of a college education ordinarily is proper, under the circumstances of this case it was questionable, certainly in the absence of a preliminary request to ascertain if respondent would increase support without litigation.

to spend 30 days with his father with no assurance that counsel would succeed, and no additional compensation if he failed. Under the circumstances, the order was an abuse of the court's discretion. The court is directed to make an appropriate order.

On retrial the court will be faced with issues and problems with respect to which we do not wish to be misunderstood. They are:

(1) If respondent desires modification of the final decree to award him custody, he should amend his motion accordingly, or give notice of his intention to request the court to treat custody as an issue under the present pleadings.

■ The evidence that appellant is poisoning the minds of the boys, as found by the court, may of itself support an order changing custody. On the other hand, there may be evidence, as inferred in appellant's brief, which, if offered, may establish that the best interests of the boys would not be served by living with their father. This evidence was not offered in the trial court, because custody was not in issue. Then, there is the question of education in relation to custody which must be given serious consideration by reason of Civil Code section 138.

■ (2) If, because of the attitude of the boys toward him, or for other reasons, the respondent does not now wish to have the boys with him, he nevertheless has a right to be heard, and his views given earnest consideration, by the court in determining what schools the boys should attend. (Civ. Code, §§ 138, 139; *Frizzell* v. *Frizzell, supra,* 158 Cal.App.2d 652; *Beal* v. *Beal, supra,* 218 Cal. 755.) He may do this without amending his pleadings, on the basis of the issue as presently raised by appellant's motion for increased support to include college expense.

■ (3) As to an increase in support payments to facilitate Michael's going to college, there is first the question of respondent's financial ability to increase the support payments ordered in the final decree. Second, while a father has an obligation to contribute toward a college education of a child capable of benefiting thereby, and in an amount reasonably related to the child's needs and the father's ability to meet those needs, the father has correlative rights. The obligation is not absolute, and relevant factors must be considered. Among them is the reciprocal obligation of the child to make a good faith effort to reflect appreciation, as a minimum, for the parent providing his support and education.

(4) The issue of visitation is before the court, and there is ample evidence to support an expansion of such rights so that respondent will have greater opportunity to give his sons the guidance which the trial court found they badly need, a finding in which this court fully concurs.

The order modifying the final decree is reversed with respect to custody and with respect to attorney's fees, and the case is remanded for retrial in accordance herewith.

The appeal having been taken in good faith, and appellant having prevailed, she is awarded attorneys' fees in the sum of $350 (*Hunter* v. *Hunter,* 202 Cal.App.2d 84, 93 [20 Cal.Rptr. 730]), together with her costs on this appeal. (Cal. Rules of Court, rule 26.)

The order is affirmed in all other respects.

Stone, P. J., and Gargano, J., concurred.