[Civ. No. 15477. Third Dist. Sept. 16, 1976.]

In re RANDY B., a Person Coming Under the Juvenile Court Law.
WILLIAM JONES, as Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
YVONNE B., Defendant and Appellant.

**COUNSEL**

Stephen James Wagner, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, N. Eugene Hill, Assistant Attorney General, Edmund E. White and Elisabeth C. Brandt, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**EVANS, J.**—Yvonne, mother of Randy, a minor child, appeals from an order of the juvenile court finding Randy to be a minor coming within the provisions of Welfare and Institutions Code section 600, subdivision (a),[1] and awarding custody of Randy to the department of public

---

[1]Welfare and Institutions Code section 600, subdivision (a), provides:

"Any person under the age of 18 years who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge such person to be a dependent child of the court.

"(a) Who is in need of proper and effective parental care or control and has no parent or guardian, or has no parent or guardian willing to exercise or capable of exercising such care or control, or has no parent or guardian actually exercising such care or control."

assistance with current placement in the home of his maternal aunt. On appeal, Randy's mother contends that: (1) the court, at the conclusion of the jurisdictional hearing, erred by failing to make a finding of detriment to the child if a parental award of custody were made; (2) the finding that an award of custody to a parent would be detrimental to the child did not satisfy the requirements of Civil Code section 4600 since the judge presiding at the dispositional hearing did not preside over and hear the evidence at the jurisdictional hearing; and (3) the evidence is insufficient to support the finding that the minor comes within section 600, subdivision (a).[2]

The record reveals the following facts to have been developed at the jurisdictional hearing. Randy, now age seven, is the natural child of Randy, Sr., and Yvonne. From birth until his parents' separation, Randy lived with them sporadically, spending lengthy periods of time with his maternal aunt Marie. Randy's father is unable to care for him, and his mother admittedly has difficulty in coping with her child and his needs.

James Hatton, employed by the child welfare division of the department of public assistance, was the social worker for Yvonne's daughter who is a dependent of the court and lives with her grandmother. As a result, he had occasion to observe Randy and his mother as early as July 1971. At that time, he observed Randy to be highly energetic, "Running and banging into everything;" it appeared to him that Yvonne was unable to control her son.

Three years later, in February of 1974, Hatton again saw Randy and noted his terrible behavior and poor interaction with his mother. He observed them to be in a constant cycle of arguing; little things would set one off which would "start the other one going . . . they just fed into each other and the whole situation heightened and got worse and worse." Hatton described Randy's behavior as approaching a "dangerous level;" he was defiant, swearing at, and hitting his mother whenever she approached him. At that time, Hatton suggested out-of-home placement in order to break the cycle of arguing, but Yvonne rejected the idea. However, she did accept his referral to mental health services. Hatton's evaluation of the situation at that time was that the mother expected Randy to act as an adult and treated him as such; and that she was unable to do otherwise. He concluded that Yvonne could not meet the needs of a small child.

---

[2] All future code section references will be to the Welfare and Institutions Code unless otherwise noted.

At Hatton's suggestion, Yvonne contacted Jean McGowan, a public health nurse for the San Joaquin Local Health District, and told her that she and Randy's father had recently separated and that she was concerned about her son's discipline and behavior problems. She advised Mrs. McGowan that Randy would take things from other people's apartments, was destructive in his own home and very aggressive towards other children. She acknowledged her inability to discipline or control Randy's behavior. Mrs. McGowan visited the home and saw the constant verbal exchange between them; she testified that although the mother used threats in an attempt to induce action, she failed to follow through with her disciplinary threats. Randy responded to his mother's threats with profanities which would trigger a screaming session.

In April 1974, Yvonne took Randy to the San Joaquin Hospital Child Development Clinic where he was seen by a pediatrician, Dr. English, specializing in child psychiatry. In his pediatric assessment, the doctor noted that the mother was having problems dealing with her son's behavior and was quite perplexed by him. He concluded that Randy was a hyperkinetic child who lacked discipline. The doctor began Randy on medication for the hyperkinesis and suggested a preschool placement. Because of transportation problems, the preschool placement was not achieved.

In July, psychological testing revealed that although Randy was four years and seven months in age, he functioned at mental levels ranging from three to four years, two months.

On a subsequent visit to the pediatrician, Yvonne advised the doctor that although Randy was on medication, she still felt him to be hyperactive and advised the doctor he was getting on her nerves. She told the doctor he easily angered her, and she was afraid she might harm him out of frustration. Because of his hyperactivity and his mother's difficulty managing him, Dr. English placed Randy on additional medication in an attempt to control or retard the hyperactive behavior. The doctor concluded that Randy was confusing to Yvonne because of his hyperactive aggressive behavior and his lack of response to certain disciplines, making it difficult for her to deal with him or be a parent to Randy in a constructive way.

In March 1975, at the request of a public health nurse, the social worker Hatton again visited Yvonne and Randy. During the visit, Hatton

told Yvonne that he would have to petition the court to remove Randy from her custody. At that time, she voluntarily placed Randy with her sister Marie.

At the outset while in Marie's care, Randy was nervous and would not listen to his aunt. Slowly, his behavior began to change. He listened more, got along better with other children, and wanted to learn and was learning to write. However, on his mother's frequent visits, Randy would become uncontrollable and after Yvonne left, Marie would have behavior problems with him.

The social worker saw Randy again in May of 1975 and observed a 100 percent improvement following the placement with his aunt. In June of 1975, a petition under section 600, subdivision (a), was filed (fn. 1, *ante,* p. 91) in San Joaquin County Superior Court. It alleged: "That said minor has no parent or guardian actually or capable of exercising proper and effective parental care or control and said minor is in need of such care or control in that since approximately August of 1974 and on or about March 27, 1975, at and in the County of San Joaquin, State of California, the mother has been unable to control the minor's behavior. Further, the minor demonstrates numerous behavioral problems, much of which results from his poor home situation. Further, the mother has many emotional problems and she is seen as being an ineffectual parent. Further, the mother is not amenable to services and has failed to follow up with the professional care which the minor needs. Further, the father, who lives separate and apart from the mother, says he cannot care for the minor. Further, the father's exact whereabouts is unknown."

On July 25, a jurisdictional hearing was held before Judge Cechini. He found the essential allegations of the petition to be true; and a determination was made that Randy came within section 600, subdivision (a). The court then scheduled a dispositional hearing for August 12. At the dispositional hearing, Judge Darrah presided. He read into the record the specific allegations which had been found true by Judge Cechini, (1) that the minor had no parent or guardian exercising proper or effective care and control; (2) that the mother had been unable to control the minor's behavior; and (3) that the minor demonstrated numerous emotional, mental and physical problems, and because of the mother's limitations, she was unable to control the child. Judge Darrah also considered the dispositional report and recommendation of the Department of Public Assistance, that Randy not live with his mother,

and that custody be placed with the department of public assistance, with placement at that time with his maternal aunt. At the hearing, Yvonne's counsel advised the court that "the dispositional report appears to be a fair evaluation and I have explained the annual review situation with Mrs. [B.], in the event that some of these factors should change." Judge Darrah then ruled that: (1) Randy be adjudged a dependent child in the juvenile court; (2) custody be taken from his mother and father; (3) an award of physical custody to the mother or father would be detrimental to the minor; and (4) Randy be committed to the care, custody and control of the Department of Public Assistance with placement at the time at the home of his maternal aunt, Marie.

## I

Section 600, subdivision (a) proceedings have two distinct procedural phases. The first, a jurisdictional proceeding, is held to determine whether the allegations of the petition may be sustained. If they are, a dispositional hearing is conducted. The procedure to be followed is prescribed in sections 702 and 706. Section 702 provides, "After hearing such evidence, the court shall make a finding, noted in the minutes of the court, whether or not the minor is a person described by Sections 600, 601, or 602. . . . If the court finds that the minor is such a person, it shall make and enter its findings and order accordingly and shall then proceed to hear evidence on the question of the proper disposition to be made of the minor. Prior to doing so, it may continue the hearing, if necessary, to receive the social study of the probation officer or to receive other evidence on its own motion or the motion of a parent or guardian for not to exceed 10 judicial days if the minor is detained during such continuance, and if the minor is not detained, it may continue the hearing to a date not later than 30 days after the date of filing of the petition."

Section 706 provides, "After finding that a minor is a person described in Sections 600, 601, or 602, the court shall hear evidence on the question of the proper disposition to be made of the minor. The court shall receive in evidence the social study of the minor made by the probation officer and such other relevant and material evidence as may be offered, and in any judgment and order of disposition, shall state the social study made by the probation officer has been read and considered by the court."

As noted, section 702 expressly authorizes a delay between the jurisdictional and dispositional stages of the proceeding. The authorized delay was utilized in this proceeding. Judge Cechini scheduled the dispositional hearing for approximately 18 days after the jurisdictional hearing, well within the periods prescribed in section 702.

Civil Code section 4600, a part of the Family Law Act relating to custody of minors, provides in part, *"Before the court makes any order awarding custody to a person or persons other than a parent,* without the consent of the parents, it shall make a finding that an award of custody to a parent would be detrimental to the child and the award to a nonparent is required to serve the best interests of the child." (Italics added.) We have italicized for emphasis the pertinent provisions of the section that a finding of detriment to the child and that a nonparent placement is required to serve the child's best interest, need only be made prior to the order awarding custody. It has been previously determined that the requirements of Civil Code section 4600 are applicable in juvenile court proceedings affecting the custody of minors. (*In re B. G.* (1974) 11 Cal.3d 679 [114 Cal.Rptr. 444, 523 P.2d 244].)

A finding of jurisdiction does not necessarily require, and in this instance did not require the removal of the minor from the then existing custodial circumstance.

After determining the question of jurisdiction, the court, in establishing the time for the dispositional hearing, stated: "All right. Ten-thirty on August 12th. And in the meantime, *the minor will remain with* the paternal—

"MR. SWEIGART: Maternal.

"THE COURT: Maternal aunt, Mrs. Marie [A.]" (Italics added.)

Randy's custody was not affected by the court's jurisdictional hearing or finding.

At the dispositional hearing on August 12, the court made the finding required by Civil Code section 4600 that parental custody was detrimental to the minor, and then made a nonparent award of custody. The mandate of the section was met by the court. Section 4600 requires only that the finding be made prior to award of custody. (See *In re Adele L.*

(1968) 267 Cal.App.2d 397, 403 [73 Cal.Rptr. 76]; *Guardianship of Marino* (1973) 30 Cal.App.3d 952, 959 [106 Cal.Rptr. 655].)

## II

The matter of an award of custody is committed to the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion or a failure to make findings as required by Civil Code section 4600. (Civ. Code, § 138; *Clarke* v. *Clarke* (1970) 4 Cal.App.3d 583, 588 [84 Cal.Rptr. 393].) The record presented bears out neither an abuse of discretion nor a failure to make proper findings on the part of the judge presiding at the dispositional hearing in making a nonparent award of custody. ■ Nor was it error for a judge other than the one who presided at the jurisdictional hearing to make custody placement. The fact that the judge hearing the jurisdictional aspect of the proceeding did not preside at the dispositional hearing is no basis for reversal. It is well established that the superior court in a particular county is a single entity, and its division into departments is simply for the convenience and expedition of its business. (*People* v. *Connolly* (1951) 103 Cal.App.2d 245, 248 [229 P.2d 112]; *People* v. *Mancha* (1963) 213 Cal.App.2d 590, 594 [29 Cal.Rptr. 72].)

■ Relative to the general claim that the judge who awarded custody of the minor was not familiar with the record, this court will not make such a presumption. (*People* v. *Connolly, supra.*) The appellant has failed to point out in the record any indication that the court was not familiar with its contents when making the custody award.

Moreover, the objection now voiced is not timely. At the dispositional hearing, appellant did not suggest the judge who heard the jurisdictional proceeding should conduct the dispositional hearing. When asked by the court if there was any legal cause why the disposition should not then be made, counsel for appellant responded negatively. (*People* v. *Mancha, supra*; *People* v. *Privitier* (1962) 200 Cal.App.2d 725, 730 [19 Cal.Rptr. 640].)

## III

■ Finally, Yvonne has challenged the sufficiency of the evidence to support the court's action declaring Randy to be a dependent child and placing him in the custody of the department of public assistance. We

are governed by the same rules that apply to all appeals; we indulge in all reasonable inferences in favor of the findings of the juvenile court (*In re Luwanna S.* (1973) 31 Cal.App.3d 112, 114 [107 Cal.Rptr. 62]; *In re Rita P.* (1970) 12 Cal.App.3d 1057, 1060 [95 Cal.Rptr. 430]), and we also must view the record in the light most favorable to the orders of the court. (*In re Biggs* (1971) 17 Cal.App.3d 337, 340 [94 Cal.Rptr. 519].) As previously noted, the evidence totally supports the finding that Randy is a child within the meaning of Welfare and Institutions Code section 600, subdivision (a). The fact that Yvonne had a genuine love and concern for her child and sought help for him and herself does not alter the fact that his special problems and her limitations made it detrimental for Randy to remain in her custody. (*In re D. L. C.* (1976) 54 Cal.App.3d 840, 848 [126 Cal.Rptr. 863].) Yvonne is admittedly unable to control the boy and his antisocial behavior. The record reveals that his behavior is greatly affected by his negative interaction with his mother. The evidence establishes Randy to be a minor without a parent or guardian capable of exercising proper and effective care or control, or who is actually exercising such care or control.

The order is affirmed.

Puglia, P. J., and Regan, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 12, 1976.