[Civ. No. 61532. Second Dist., Div. One. Oct. 29, 1981.]

In re the Marriage of KARINA LYNNETTE and
JOHN DAVID ANDERSON.
KARINA LYNNETTE ANDERSON, Appellant, v.
JOHN DAVID ANDERSON, Respondent.

**COUNSEL**

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Andrew D. Amerson, Deputy Attorneys General, for Appellant.

Tom Takenouchi for Respondent.

**OPINION**

**HANSON (Thaxton), J.**—Karina Lynnette Anderson appeals the trial court's denial of her motion for an assignment of salary or wages under Civil Code section 4701, subdivision (b), as against John David Anderson, her former husband.

### FACTS

On January 14, 1980, Karina noticed a motion for the salary assignment of $80 per month for current support plus $20 for arrearages. The motion was supported by points and authorities and the declaration of the court trustee stating that an arrearage of $1,134.10 existed.

John filed a responsive declaration alleging that he did not consent to the order of assignment of salary; that he had heard nothing from Karina between January 12, 1973, and December 8, 1978, although he

had made periodic efforts to ascertain her whereabouts; that the only address he was provided was that of her mother; and that he had been unable to contact Karina or his son and had had no visitation with his son.

Karina thereupon filed additional points and authorities in support of her motion together with a declaration in which she alleged that John knew how to reach her at her place of employment; that she had given John's telephone number to their son and urged him to call his father in December 1976; and that John had not contacted her except in court since that time.

At the hearing both John and Karina appeared and testified.

Karina and John were divorced in 1964. Custody of their son, David, born March 9, 1963, was awarded to Karina, subject to reasonable visitation with his father. From 1964 through 1973, John exercised his visitation privilege only when Karina took the child to visit John's parents. Karina and John rarely communicated on the subject of visitation during this time. The child never received any gifts from John at birthdays or Christmas.

In 1973 Karina remarried and moved from Pasadena, California, to the Virgin Islands with her new husband, a Mr. Cains, and David. She testified that they returned to Pasadena in December 1973. At the time of the hearing Karina was divorced from Mr. Cains and had remarried a Mr. Trotman who made no contribution to David's support. During her marriage to Mr. Cains, David assumed the name David Cains and at the time of the hearing he continued to be known by that surname.

Shortly before Karina moved, Karina and John had a telephone conversation. Karina testified that they had a hostile discussion concerning child support, and that she advised John that she could be reached through her mother's address since she had no present address. Karina denied that any discussion of visitation took place or that she informed John she did not want him to see the child again. John testified that Karina told him he would not be permitted to visit his son, that she "didn't want to be bothered." John denied any discussion of child support, but said he understood Karina's remark to mean that she did not want any contact between father and son or any child support for him.

John testified further that in January 1973 John's father received a wedding announcement of Karina's forthcoming marriage to Mr. Cains. She also informed him that she and David were residing out of the country, that they would not return, and that further support for the child was not necessary as her new husband would provide it.

Prior to October 1973 John was making child support payments through a court trustee under the supervision of a probation officer. During that same year probation was terminated because they had lost contact with Karina and John was directed to make future child support payments directly to his former wife. John testified that he did not have any knowledge of Karina's whereabouts, and that he was advised that she would have to provide an address in order for him to continue making his payments. Karina never contacted John or provided her address until the court in 1978 ordered her to provide him with her phone number at the district attorney's office where she had been employed since 1974.

John also testified that he met Karina by chance at a shopping mall in 1977. In response to John's inquiries, Karina informed him that their son was fine but that John would never see him.

In 1978 John moved for an order to show cause, requesting that the existing child support order of $80 per month be reduced to zero due to his inability to pay. The motion was denied and in an order dated December 8, 1978, John was directed to pay the $80 per month plus $20 per month for arrearages.

On January 14, 1980, Karina moved for an assignment of salary or wages under Civil Code section 4701, subdivision (b), in the amounts of $80 per month current support plus $20 per month for arrearages. John opposed the motion but stipulated that for the period December 1, 1978, through January 31, 1980, the amount of child support owed was $1,120, the amount paid was $185.90, and the amount in arrears as of the February 6, 1980, hearing was $934.10. Both Karina and John testified regarding visitation in hearings conducted in the matter. The trial court denied Karina's motion on "equitable" grounds. Karina appeals.

## ISSUE

■ The issue on this appeal is whether the superior court erred in refusing to issue the order for a wage assignment under Civil Code section 4701, subdivision (b), on the grounds that the custodial parent has denied the absent parent visitation.

## DISCUSSION

Civil Code section 4701[1] sets forth the statutory requirements requisite to a wage assignment. Subdivision (a) describes the circumstances under which a court, in its discretion, may order a wage assignment, whereas subdivision (b) states situations in which the presiding court must issue the order for the assignment. (*In re Marriage of De More* (1979) 93 Cal.App.3d 785, 787 [155 Cal.Rptr. 899]; *Le Claire v. Le Claire* (1981) 118 Cal.App.3d 931, 934-935 [173 Cal.Rptr. 740].) Its provisions are mandatory "to ensure the timely and adequate support of minor children and to minimize the necessity of a parent who has custody of the minors to resort to the courts in order to enforce support orders . . . ." (*In re Marriage of De More, supra*, 93 Cal.App.3d at p. 787; *Le Claire v. Le Claire, supra*, 118 Cal.App.3d at p. 935.)

---

[1]Unless otherwise indicated, all statutory references are to the Civil Code.

Section 4701 in pertinent part provides: "(a) In any proceeding where the court has ordered either or both parents to pay any amount for the support of a minor child, the court may order either parent or both parents to assign to the county clerk, probation officer, or other officer of the court or county officer designated by the court to receive the payment, that portion of salary or wages of either parent due or to be due in the future as will be sufficient to pay the amount ordered by the court for the support, maintenance, and education of the minor child. The order shall operate as an assignment and shall be binding upon any existing or future employer of the defaulting parent upon whom a copy of the order is served. Any such order may be modified or revoked at any time by the court.

"(b)(1) Notwithstanding the provisions of subdivision (a), in any proceeding where the court has ordered either or both parents to pay any amount for the support of a minor child, upon a petition signed under penalty of perjury by the person or county officer to whom support has been ordered to have been paid that the parent so ordered is in arrears in payment in a sum equal to the amount of one month of the payment within the 24-month period immediately preceding filing of the petition with the court, the court shall issue without notice to the parent ordered to pay support an order requiring the parent ordered to pay support to assign either to the person to whom support has been ordered to have been paid or to a county officer designated by the court to receive the payment, that portion of the salary or wages of the parent due or to be due in the future as will be sufficient to pay the amount ordered by the court for the support, maintenance, and education of the minor child. Such an order shall operate as an assignment and shall be binding upon any existing or future employer of the parent ordered to pay support upon whom a copy of the order is served."

A wage assignment must issue under the conditions described in section 4701, subdivision (b), unless the nonmoving party successfully raises one of the equitable defenses enumerated in section 4701, subdivision (b)(6),[2] namely (1) that no default occurred within the 24-month period referred to in the statute or (2) that the amount claimed due was in fact not owing.

John argued that the arrearage was not owed because Karina had waived her rights to it by virtue of her conduct and statements concerning child support and denying John's visitation rights. However, denial or frustration of visitation rights does not justify termination or reduction of child support payments. Therefore, by analogy, it will not justify a denial of a wage or salary assignment where payments are in arrears.

There has been some divergence among the California cases concerning the effect on support obligations of the custodial parent's willful failure to comply with a visitation order. Several courts have held that a mother is estopped to enforce accrued but unpaid child support payments where she has displayed an intent to frustrate the father's visitation rights. (*Szamocki* v. *Szamocki* (1975) 47 Cal.App.3d 812, 818-820 [121 Cal.Rptr. 231]; *Kaminski* v. *Kaminski* (1970) 8 Cal.App.3d 563, 565-568 [87 Cal.Rptr. 453].) However, other courts have disapproved cancellation of child support obligations to punish a recalcitrant custodial parent, because such action is contrary to the best interests of the child who is entitled to necessary support. (*Moffat* v. *Moffat* (1980) 27 Cal.3d 645, 651 [165 Cal.Rptr. 877, 612 P.2d 967]; *In re Marriage of Roesch* (1978) 83 Cal.App.3d 96, 103-104 [147 Cal.Rptr. 586], cert. den. 440 U.S. 915 [59 L.Ed.2d 465, 99 S.Ct. 1232]; *In re Marriage of Ciganovich* (1976) 61 Cal.App.3d 289, 294-295 [132 Cal.Rptr. 261]; *Clarke* v. *Clarke* (1970) 4 Cal.App.3d 583, 589-590 [84 Cal.Rptr. 393]; *Ernst* v. *Ernst* (1963) 214 Cal.App.2d 174, 178 [29 Cal.Rptr. 478].) Retaliatory actions of the parent clearly adverse to the child's best interest will not be judicially sanctioned. (*Id.*, at p. 179.)

Significantly, the noncustodial parent whose visitation rights are frustrated may enforce those rights by methods considered less detrimental

---

[2]Section 4701, subdivision (b)(6), provides in pertinent part: "A parent alleged to be in default may move to quash an assignment order issued under this subdivision within 10 days after service on the parent of notice of the assignment order by his or her employer if the parent states under oath that a default in the amount alleged in the petition has not occurred within the 24-month period referred to in the petition or that the amount is not owed...."

to the child's welfare, such as termination of spousal support (*Clarke v. Clarke, supra,* 4 Cal.App.3d at p. 589), a civil contempt proceeding (*Rosin v. Superior Court* (1960) 181 Cal.App.2d 486, 490-500 [5 Cal. Rptr. 421]), or modification of a custody order (*In re Marriage of Ciganovich, supra,* 61 Cal.App.3d at pp. 294-295; see *Moffat v. Moffat, supra,* 27 Cal.3d at p. 652). The advantage of such procedures is that they assure a neutral determination of the disagreement between the parents. (*In re Marriage of Roesch, supra,* 83 Cal.App.3d 96, 104.)

The view that a parent's sabotage of the noncustodial parent's visitation rights does not justify withholding child support payments has recently been codified by the California Legislature in section 4382[3] effective January 1, 1981. Although the language of the statute does not indicate that the Legislature intended it to operate retroactively, the statute expresses legislative approval of the judicial view prevailing prior to its enactment.

By virtue of current law, the superior court in the case at bench had no discretion to deny the motion for an assignment of salary or wages on the equitable ground that the custodial parent by depriving the father of visitation had waived her right to child support payments.

Furthermore, assuming arguendo that denial of visitation rights might constitute an appropriate ground for modifying a child support order or defeating wage assignments, John's theory is barred by the doctrine of res judicata. In late 1978 John sought to modify his child support obligations, ostensibly because he was unable to pay. Modification was denied and John was ordered to pay $20 monthly in arrearages in addition to his existing obligation of $80 per month in child support.

The 1978 order constituted a final judgment on the merits between Karina and John concerning John's support obligations. ▪ "[A] final judgment on the merits between the same parties bars a later action upon the same cause of action. ..." (*Carroll v. Puritan Leasing Co.* (1978) 77 Cal.App.3d 481, 486 [143 Cal.Rptr. 772].) The nature and substance of a cause of action are determined by the right or liability sought to be established or enforced. If the second action is based on

---

[3]Section 4382 provides: "The existence or enforcement of a duty of support owed by a noncustodial parent for the support of a minor child shall not be affected by a failure or refusal by the custodial parent to implement any rights as to custody or visitation granted by a court to the noncustodial parent."

the same right or obligation, the cause of action is the same even though different or additional relief is sought. (*Id.*, at p. 487.) When the right or obligation sought to be enforced has once been adjudicated, it cannot be relitigated on any grounds that were or that could have been determined in the former action. (*Kronkright* v. *Gardner* (1973) 31 Cal.App.3d 214, 217 [107 Cal.Rptr. 270]; *Carroll* v. *Puritan Leasing Co., supra*, 77 Cal.App.3d 481, 486.)

█   At issue in the 1978 proceedings was John's liability for child support payments. At that time John argued solely that he was financially unable to meet his obligations. He was entitled to raise the waiver issue and could have done so since most of the facts which he presently alleges concerning Karina's behavior interfering with visitation and child support were known to him as of 1978. John's support obligations are the subject of the present action; the 1978 judgment bars relitigation of those obligations now.

The record shows that the parties entered into a stipulation below to the effect that as of the date of the hearing on February 6, 1980, John was, since December 1978, $934.10 in arrears. At the June 6, 1980, hearing John testified that he had made no payments of child support since December 1978. The admitted arrearage is substantially in excess of two months of child support payments of $80 per month ordered by the court on December 8, 1978.

It is clear that by virtue of the stipulation by both parties the statutory requirements requisite to a wage assignment under section 4701, subdivision (b), were met. Since no exceptions under subdivision (b)(6) are applicable, an order for wage assignment is required.

Furthermore, since the evidence regarding arrearages since 1978 was uncontradicted, the record establishes as fact that John was in arrears in child support payments of $934.10 at the time the motion for assignment of salary or wages was filed. In addition, we find that this sum exceeds the amount of 2 months of such payments within the 24-month period immediately preceding the filing of Karina's request for assignment. (*San Jose etc. Title Ins. Co.* v. *Elliott* (1952) 108 Cal.App.2d 793, 803 [240 P.2d 41]; *Luce* v. *Sutton* (1953) 115 Cal.App.2d 428, 434-435 [252 P.2d 352]; Cal. Rules of Court, rule 23(a); Code Civ. Proc., § 909; § 4701, subd. (b).)

Therefore, the superior court abused its discretion in denying the motion for assignment of salary or wages which is mandatory under the facts established by the record.

## DISPOSITION

The order (denying the motion for wage assignment) is reversed. The superior court is instructed to enter an order directing assignment of John's salary or wages.

Lillie, Acting P. J., and Dalsimer, J., concurred.