[Civ. No. 26405.   Second Dist., Div. Four.   Mar. 19, 1963.]

BETTY J. ERNST, Plaintiff and Appellant, v. DONALD ERNST, Defendant and Respondent.

Shatford & Shatford, Henry W. Shatford and Frances S. Hill for Plaintiff and Appellant.

John K. Ford for Defendant and Respondent.

KINGSLEY, J.—This is an appeal from an order modifying the provisions for support of the minor children of the parties as contained in the interlocutory decree of divorce.[1]

The decree granted custody of the two minor sons of the parties (now aged 13 and 11 respectively) to the mother, "the defendant to have the right of reasonable visitation." The defendant father was ordered to pay "as and for support" of the children $50 per month per child and to pay one-half of the cost of medical and hospital insurance. The decree approved a property settlement agreement under which the wife received, as her separate property, certain real property in this state.

Sometime in late August or early September 1961 (the record does not disclose the exact date) the mother sold this property and took the children to Florida. As far as appears from the brief record this was without advance notice to the father and without his consent. The interlocutory decree neither prohibited nor authorized the removal of the children from the state.

On October 18, 1961, the father filed his declaration in support of an order to show cause in re modification, praying that the decree be modified as follows: "Terminate the order for support of children until plaintiff returns them to this court's jurisdiction." The declaration, after reciting the original custody and support order, alleged as follows:

"That since said order was made the conditions and circumstances surrounding the parties, and upon which said

---

[1] The clerk's transcript on appeal did not contain (because not requested by appellant) the order appealed from. The court, of its own motion, has ordered the record augmented by inclusion of the entire superior court file in the action. (Cal. Rules of Court, rule 12(a).)*
*Formerly Rules on Appeal, rule 12(a).

Order was based, have materially changed, in this: On or about September 27, 1961, plaintiff and the minor children disappeared from their home, 9948 East Live Oak, Temple City. Upon investigation, I learned the plaintiff had sold the two parcels of real property she received under the property settlement agreement. On October 3, 1961, I received a letter from each of the children, stating that they had moved to Florida. As a result, I am unable to visit with my children as provided by the Agreement and the divorce decree.''

■ It is to be noted that the declaration nowhere alleges that the wife had knowledge of the terms of the custody order, and our examination of the original file[2] fails to show any proof of that fact. No testimony bearing on her knowledge was introduced at the hearing hereinafter referred to. True, the files of the trial court show the wife to have been present at the trial and to have presented the property settlement agreement (which contained the stipulation as to custody and visitation) for approval of the court. The court announced its approval of the agreement and gave the wife an interlocutory decree in accordance with the terms of a judgment signed and filed that day. From this showing we may assume that the wife had knowledge of the custody order. Of utmost importance, however, is the fact that neither the declaration, nor the evidence, refer at all to the effect of the proposed modification on the welfare and best interests of the children involved by which the trial court must be guided primarily. (*Dozier* v. *Dozier*, 167 Cal.App.2d 714, 716 [334 P.2d 957].)

After a brief hearing, at which only the father testified, devoted solely to an elaboration of his desire to force the mother to return the children so that *his* visitation rights could more easily be enjoyed, and to some discussion of the effect of the proposed modification on the mother's ability to comply with a provision of the decree requiring enrollment of the sons in a church school, the court made and entered its order as follows:

''The court finds that the plaintiff had knowledge of the order herein entered on February 2, 1961, fixing specific visitation rights to defendant in re the minor children. The

[2]See footnote 1.

court further finds that the plaintiff had the ability at all times to comply with said order, that she failed to comply with said order and that her failure to comply with said order was wilful and was done for the purpose of depriving defendant of his right to visit the minor children and that plaintiff has interfered with the process of this court.

"Therefore; the interlocutory judgment herein entered on February 2, 1961, in book 4139 at page 011 is hereby modified in that defendant is not required to pay to plaintiff the $50.00 per month per child for support of said minor children until such time as plaintiff returns said children to the jurisdiction of this court, i.e., the County of Los Angeles, State of California. It is further ordered, pursuant to stipulation herein, that the above order be effective as of October 15, 1961. The clerk is ordered to alter the judgment accordingly."

As the court points out in *Stack* v. *Stack* (1961), 189 Cal. App.2d 357 [11 Cal.Rptr. 177], the cases dealing with the removal of children from the state and the effect of such removal follow no clear pattern. The basic consideration is the welfare of the children. In the *Stack* case, the court sustained an order modifying the custody order so as to transfer custody to the California resident. In *Rosin* v. *Superior Court* (1960) 181 Cal.App.2d 486 [5 Cal.Rptr. 421], the court sustained an order finding the mother in contempt of court for a removal of the children, even though no prohibitory order existed. It is to be noted that the visitation order was much more specific than the order involved in the case before us. It provided that the father would have visitation privileges on alternate weekends which obviously would be defeated by the mother's removal of the children to another state. Contempt proceedings were resorted to for enforcement purposes. In *White* v. *White* (1945) 71 Cal. App.2d 390 [163 P.2d 89], the court sustained an order similar to the one at bar, but in that case the removal was in violation of an express prohibition in the decree and the sum involved ($30 per month) was, as the court pointed out, clearly never intended to provide full support for the child in question. In *Williams* v. *Williams* (1951) 103 Cal.App.2d 276 [229 P.2d 830], the court sustained an order suspending *alimony* payments so long as the children were outside this state. ▪ On the other hand, removals have been allowed even though they frustrated parental visitation rights confirmed by a decree. In *Dozier* v. *Dozier, supra,* 167 Cal.App. 2d 714, the court said, at page 719: "The fact that by the

178

child's removal from the state the father may be deprived of his visitation rights is generally not alone sufficient to justify restraint on the mother's free movement unless the latter is inconsistent with the welfare of the child." (See also *Evans v. Evans* (1960) 185 Cal.App.2d 566 [8 Cal.Rptr. 412]; *Stanberry* v. *Stanberry* (1947) 81 Cal.App.2d 412 [184 P.2d 16].)

We think the above sampling of cases referred to in the briefs is sufficient to show that the results have turned on the special facts of each case and on the form of remedy invoked.

On the record in the case before us, we conclude the order under appeal should be reversed:

(1) We do not believe that an order which merely grants to the father the right of "reasonable visitation" can properly be referred to as one "fixing specific visitation rights";

(2) We cannot accept the trial court's finding that plaintiff's removal of the children was "done for the purpose of depriving defendant of his right to visit" where, unlike *Evans, supra,* there was no allegation of such intent, nor as in *White, supra,* was the removal in violation of an express prohibition by the court which was shown to have been known to the mother. Whatever inferences of intent may be drawn, when the fact is properly put in issue by the affidavit or declaration, from a removal in the face of a detailed visitation scheme known to the mother, we do not think that they can be drawn from a general order not shown to have been brought home to the party.

(3) We feel that the order of modification loses sight of the primary consideration as to what is for the best interests of the two children. The original decree impliedly found that this interest was best served by maternal custody and with the father contributing the prescribed amount for the support of the children. Neither in allegation nor in evidence were changes in conditions shown to have taken place warranting any modifications of these basic findings which were made by the court at the time of granting the interlocutory decree;[3] nor does the order of modification refer to them. Whatever other remedy may be proper, on a more full showing with respect to changes which have taken

[3]We are aware of the fact that the record indicates the sale by plaintiff of real property prior to her departure for Florida. This does not relieve the father of his obligation to support his children.

place since the interlocutory decree and the reasons therefor, we do not regard an order depriving the children of support for an alleged fault of the mother (especially when such fault is unproven) as a proper exercise of the court's discretion in such matters.

■ Nothing said in this decision is intended to condone or encourage the removal of children of divorced parents from the state without the prior knowledge or consent of the parent not having custody. Absent consent of such parent, approval should be sought from the court which, with all of the relevant facts placed before it, could consider the proposal and weigh its effect upon the welfare of the children.

The order appealed from is reversed without prejudice to any new proceedings in the trial court not inconsistent with this opinion.[4]

Burke, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied April 11, 1963, and respondent's petition for a hearing by the Supreme Court was denied May 14, 1963. Schauer, J., Peters, J., and Peek, J., were of the opinion that the petition should be granted.

---

[4]Although the parties speculated on the matter at the hearing and in the briefs, we do not regard the effect of the modification on the plaintiff's ability to comply with the portions of the decree dealing with education as being presently involved. If further proceedings are held in the trial court, it can, and should, consider this factor along with all other issues in arriving at any new order it may feel impelled to issue.