[No. A012132. Sixth Dist. July 22, 1985.]

In re the Marriage of ORALIA C. LUGO and RAMON A. LUGO.
ORALIA C. LUGO, Respondent, v.
RAMON A. LUGO, Appellant.

428

**COUNSEL**

Rudolph G. Kraft, Jr., and Dreyer, Shulman, Kraft & Hirsch for Appellant.

John K. Van de Kamp, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Gloria F. DeHart and Mary A. Roth, Deputy Attorneys General, for Respondent.

## OPINION

**BRAUER, J.**—Ramon A. Lugo appeals from an order made more than seven years after a final judgment of dissolution of marriage.[1] (Code Civ. Proc., § 904.1, subd. (b).) That order (1) nullified an earlier court order which had suspended appellant's obligation to pay child support, and (2) denied appellant's motion challenging the amount of claimed arrearages in child support payments. For a variety of reasons appellant now claims, in essence, that the earlier order was valid and that the later one is not.

The principal issue on this appeal is whether a county which provides benefits to a custodial parent under the aid to families with dependent children program (AFDC) is an indispensable party to an action which seeks to reduce or suspend the noncustodial parent's obligation to pay child support. For reasons explained below, we conclude that it is, and that the order of the court below should be affirmed.

### HISTORY

Appellant's marriage to Oralia C. Lugo was terminated by a final judgment of dissolution filed in the superior court of Santa Clara County on February 15, 1973. At that time Mrs. Lugo was receiving benefits under the AFDC program, as she had been since September of 1970. There were six minor children of the marriage, custody of whom was awarded to Mrs. Lugo. By the terms of the judgment appellant was ordered to pay the sum of $250 per month (total) in child support, and to make his payments through Santa Clara County's Adult Probation Department.

In June of 1973 appellant became disabled and unemployed. Thereafter the District Attorney of Santa Clara County, by means of an order to show cause, sought to have appellant held in contempt for failing to pay child support as ordered. A contempt hearing was held on January 11, 1974. During the course of that hearing appellant's counsel informed both the court and the deputy district attorney that "I have filed a motion which is set for January 29th on modification of support because he has not been working since June and does not have a date when he will be going back to work." Appellant was found not to be in contempt.

Three days later, on January 14, 1974, appellant's counsel filed a notice of motion to suspend child support payments during the period of appellant's unemployment. No copies of the notice or of the supporting papers were sent to or served upon either the County of Santa Clara or the District

---

[1] On remand from the Supreme Court with directions after grant of Petition for Review.

Attorney's Office, and no representative of the County attended the hearing of the motion, which was held on January 29, 1974. At that hearing appellant and Mrs. Lugo, both represented by counsel, stipulated that "while Mr. Lugo is out of work, support payments will be suspended . . . ." On March 6, 1974 the court filed a formal order based upon the stipulation; the order provided, "Child support payments are suspended during the period when respondent is unemployed due to disability." About three months later the District Attorney's Office received a copy of the order.

More than five years later, on August 17, 1979, the District Attorney of Santa Clara County filed with the court a notice which stated, among other things, that all rights to the support of the six Lugo children had been assigned to the County, in accord with the provisions of Welfare and Institutions Code section 11477, subdivision (a).[2] Thereafter, on a date not specified, the County placed a lien on appellant's home, to secure the eventual payment of the arrearages in his child support installments.

On January 16, 1980 appellant, represented by different counsel,[3] filed a notice of motion "to establish and determine child support arrearages." In that motion appellant claimed that because of the earlier court order of March 7, 1974, he did not owe the amount of arrearages claimed by the County. In connection with that motion, and in an effort to establish that the District Attorney's Office had had actual advance notice of the previous modification proceedings, appellant also moved for an order allowing him to inspect the District Attorney's "file" in the case. Appellant there contended that such discovery was essential because "information may exist in the District Attorney's file which would lead the court to find that the District Attorney was aware at the time of the proceedings and would, therefore, be estopped from denying knowledge."

 ██ The trial court denied both motions.[4] In a document

---

[2]It is not clear what this notice was intended to accomplish. By the provisions of Welfare and Institutions Code section 11477, subdivision (a), as it then read, receipt of public assistance resulted in an assignment, by operation of law, of the recipient's support rights to the county providing the assistance.

[3]Appellant was represented by several different counsel below. He here suggests that the trial court's order must be reversed because his trial counsel were incompetent. We ignore this argument. Appellant has not troubled to specify which of his counsel committed what transgression, and in any event, this is not a criminal case.

[4]The trial court also issued a "Memorandum Decision" concerning the motion to determine the arrearages. A good portion of appellant's opening brief is devoted to a quarrel with the reasons advanced by the trial court in its "Memorandum Decision." We avoid those arguments for two reasons. First, an announcement of an intended decision is not a judgment, and is not binding on a trial court. (Rule 232(a) of California Rules of Court.) Second, " 'The fact that the action of the court may have been based upon an erroneous theory of the case, or upon an improper or unsound course of reasoning, cannot determine

entitled "Order after Order to Show Cause,"[5] the court ruled (1) that "the order signed by the court suspending child support . . . be considered null and void and not subject to validation even under equitable principles;" and (2) that because appellant had "actual or constructive knowledge of [Mrs. Lugo's] receipt of public assistance, and . . . failed to inform the Court of this fact or the District Attorney of his motion to modify support [appellant] was himself guilty of 'unclean hands' and should be denied equitable relief."[6]

From that order this appeal is taken.[7]

## THE COUNTY WAS AN INDISPENSABLE PARTY

■ Appellant contends that "[t]here is no basis in law for the assertion that the [C]ounty was an indispensable party to the modification hearing held in 1974." We disagree. Our own research has disclosed the case of *County of Alameda* v. *Clifford* (1960) 187 Cal.App.2d 714 [10 Cal.Rptr. 144], which provides an illuminating precedent. We summarize *Clifford* as follows:

The defendant's (Clifford's) mother was receiving from Alameda County an old age security grant involving county, state, and federal funds. Clifford

---

the question of its propriety. No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion.' " (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 18-19 [112 Cal.Rptr. 786, 520 P.2d 10], quoting from *Davey* v. *Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117].)

[5]The District Attorney was directed to prepare this Order in the court's "Memorandum Decision" (see footnote 3, *ante*), and the title of the Order seems to have been his invention. In point of fact, aside from the District Attorney's effort to hold appellant in contempt, no order to show cause was issued by the court below. With the exception noted, all proceedings below were initiated by notices of motion.

[6]Actually, the trial judge who suspended appellant's child support payments was fully aware that Mrs. Lugo was receiving welfare benefits. But more than five years later, the judge who nullified the 1974 order was not aware of his colleague's knowledge, probably because a transcript of the 1974 hearings had not been prepared.

[7]We deem the order to be an appealable one, because it was made after a final judgment and it affects the enforcement of the judgment. (See *County of Ventura* v. *Tillett* (1982) 133 Cal.App.3d 105, 110-111 [183 Cal.Rptr. 741] [postjudgment order denying motion to vacate earlier stipulated judgment held appealable], disapproved on another point in *County of Los Angeles* v. *Soto* (1984) 35 Cal.3d 483, 492 fn. 4 [198 Cal.Rptr. 779, 674 P.2d 750]; *In re Marriage of Schultz* (1980) 105 Cal.App.3d 846, 851-52 [164 Cal.Rptr. 653] [post-judgment order adjusting earlier accounting held appealable]; *Garrett* v. *Garrett* (1968) 258 Cal.App.2d 407, 411, fn. 2 [65 Cal.Rptr. 580] [postjudgment order to pay support arrearages held appealable].)

brought an action under section 206.5 of the Civil Code, seeking to terminate his obligation to support his mother. Alameda County had no notice of, and was not made a party to, Clifford's action. Clifford obtained a judgment in his favor. Alameda County thereafter filed a complaint to set aside Clifford's judgment on the ground, among others, that it was an indispensable party to Clifford's action and had not been afforded an opportunity to be heard. Clifford demurred to the County's complaint; the trial court sustained the demurrer without leave to amend, and then gave judgment for Clifford. The Court of Appeal reversed, holding that the County was an indispensable party to any action brought under Civil Code section 206.5. (*County of Alameda* v. *Clifford, supra,* 187 Cal.App.2d at pp. 719-723.) Since it had been afforded neither notice nor an opportunity to be heard, the County was entitled to set aside Clifford's earlier judgment. (*Id.,* at pp. 720-721.)

We discern no significant difference between the *Clifford* case and this one. Here, as in *Clifford,* the County of Santa Clara was disbursing to Mrs. Lugo a grant involving county, state, and federal funds;[8] the recipient of those funds was a mother; and the obligor (appellant) sought to end his duty to support the person receiving financial assistance from a county. If Alameda County was an indispensable party to Clifford's action, it follows that Santa Clara County was no less an indispensable party to appellant's motion to suspend his child support payments.

■ Our view is reinforced by the language of Civil Code section 248, which has been in effect since 1955. That section provides in part that "the county may proceed on behalf of the obligee to enforce [her] right of support against the obligor. Whenever the county furnishes support to an obligee, it has the same right as the obligee to whom the support was furnished, for the purpose of securing reimbursement *and of obtaining continuing support.*" (Italics added.) The quoted language plainly gives to a county furnishing AFDC benefits both (1) a statutory right to reimbursement from the primary obligor for benefits already provided, and (2) a statutory right to ongoing support. **(1c)** In any legal proceeding which seeks to diminish or impair those statutory rights, the county is an indispensable party. (Cf. Code Civ. Proc. § 389, subd. (a)(2)(i).)

■ As an indispensable party, the County of Santa Clara was entitled to legitimate notice of appellant's motion. (*County of Alameda* v. *Clifford, supra,* 187 Cal.App.2d at p. 721.) For reasons explained in the next section, we conclude that it did not have such notice.

---

[8]See *In re Marriage of Shore* (1977) 71 Cal.App.3d 290, 294-300 [139 Cal.Rptr. 349].

## The County Had No Legal Notice

"The notice required to be given . . . of an application for an order modifying the provisions of an order for child custody *or support* in a divorce action is that provided for in the Code of Civil Procedure relating to the giving and service of notice of motions in civil actions, i.e., part 2, title 14, chapters 4 and 5 (§§ 1003 to 1008, incl., and 1010 to 1020, incl.)." (*Forslund* v. *Forslund* (1964) 225 Cal.App.2d 476, 484-485 [37 Cal.Rptr. 489]; italics added, footnote omitted.) ▮ Section 1010 of the Code of Civil Procedure begins, "Notices must be in writing, and the notice of a motion, other than for a new trial, must state when, and the grounds upon which it will be made, and the papers, if any, upon which it is to be based." Where written notice is required, oral notice will not suffice. (*O'Brien* v. *Cseh* (1983) 148 Cal.App.3d 957, 961 [196 Cal.Rptr. 409]; *Harris* v. *Board of Education* (1957) 152 Cal.App.2d 677, 681-682 [313 P.2d 212].) The fact (and we express no opinion as to whether it is the fact here) that an opposing party has actual knowledge of a pending court proceeding does not excuse the moving party from the requirement of giving the written notice required by statute. (*Cugat* v. *Cugat* (1951) 102 Cal.App.2d 760, 762 [228 P.2d 31].)

Nothing in the record before us suggests that the County of Santa Clara ever was given beforehand a statutory written notice of appellant's 1974 modification motion. Consequently, the County was not bound by the court's 1974 order suspending appellant's child support payments. (*Kraus* v. *Willow Park Public Golf Course* (1977) 73 Cal.App.3d 354, 363-370 [140 Cal.Rptr. 744].)

## Discovery Was Properly Denied

Apparently arguing in the alternative, appellant contends (1) that the District Attorney had actual advance notice of the modification proceeding in 1974, and (2) that the court below committed reversible error in denying appellant's motion to inspect the District Attorney's "file," because it thereby prevented appellant from demonstrating that the District Attorney had such actual notice. Neither argument has merit.

Appellant did not below, and does not here, suggest that the District Attorney's "file" contained a copy of a statutory written notice of his 1974 motion to suspend child support payments. Instead, appellant's motion to inspect the "file" sought "information . . . which would lead the court to find that the District Attorney was aware at the time of the proceedings and

would, therefore, be estopped from denying knowledge." ■ But as we have seen, whether the District Attorney had actual foreknowledge of the 1974 motion simply was not relevant. A party seeking an order permitting him to inspect documents must demonstrate that the material sought is *relevant* to the subject matter of the action, or is calculated to lead to the discovery of admissible evidence. (*Volkswagenwerk Aktiengesellschaft* v. *Superior Court* (1981) 123 Cal.App.3d 840, 850 [176 Cal.Rptr. 874].) In the absence of a showing of relevance, the trial court properly denied appellant's discovery motion.

### THE COUNTY IS NOT BARRED BY LACHES OR ESTOPPEL

Appellant next contends that the County of Santa Clara should be barred from collecting arrearages in child support payments because it took no action for more than five years after it became aware of the 1974 order. Appellant's position seems to be that the County's inaction lulled him into a false sense of security, i.e., into a belief that the 1974 modification order was binding on the County.

The elements of equitable estoppel are not shown in the record. ■ "[E]stoppel requires some affirmative representation or acts by the public agency or its representatives inducing reliance by the claimant." (*Tammen* v. *County of San Diego* (1967) 66 Cal.2d 468, 480-481 [58 Cal.Rptr. 249, 426 P.2d 753]; and see *City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 488-489 [91 Cal.Rptr. 23, 476 P.2d 423].) Our independent search of the record discloses no such affirmative act or representation on the part of the County of Santa Clara.

■ ■ But quite apart from the foregoing consideration, we are persuaded that neither the doctrine of equitable estoppel nor that of laches has any application to this case. It is well established that an estoppel will not be raised against a county when to do so would nullify " 'a strong rule of policy, adopted for the benefit of the public, . . . .' " (*County of Los Angeles* v. *Berk* (1980) 26 Cal.3d 201, 222 [161 Cal.Rptr. 742, 605 P.2d 381], cert. den. in 449 U.S. 836 [66 L.Ed.2d 43, 101 S.Ct. 111]; *City of Long Beach* v. *Mansell, supra,* 3 Cal.3d at p. 493.) A similar rule has developed with respect to the doctrine of laches; that doctrine is rarely invoked against a public entity to defeat a policy adopted for the protection of the public. (*City and County of San Francisco* v. *Pacello* (1978) 85 Cal.App.3d 637, 646 [149 Cal.Rptr. 705]; *People* v. *Department of Housing & Community Dev.* (1975) 45 Cal.App.3d 185, 196-197 [119 Cal.Rptr. 266]; *City of Fontana* v. *Atkinson* (1963) 212 Cal.App.2d 499, 507-508 [28 Cal.Rptr. 25].)

Where the mother is receiving AFDC benefits, "the enforcement of child support rights involves not only a matter of private or local concern, but poses an important question for the federal and state governments as well." (*In re Marriage of Shore* (1977) 71 Cal.App.3d 290, 295 [139 Cal.Rptr. 349].) ■ Civil Code section 248 provides in part that: "Whenever the county furnishes support to an obligee, it has the same right as the obligee to whom the support was furnished, for the purpose of securing reimbursement and of obtaining continuing support." Welfare and Institutions Code section 11477 now provides that as a condition of eligibility for the receipt of AFDC benefits, an applicant must assign to the county "any rights to support from any other person such applicant may have in their own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid, and which have accrued at the time such assignment is made. Receipt of public assistance under this chapter shall operate as assignment by operation of law." (*County of Santa Clara* v. *Support, Inc.* (1979) 89 Cal.App.3d 687, 696 [152 Cal.Rptr. 754].) A county district attorney is directed by statute (Welf. & Inst. Code § 11475.1) to "take appropriate action, both civil and criminal," to enforce an obligation of child support. (*In re Marriage of Guardino, supra,* 95 Cal.App.3d 77, 85; *County of Santa Clara* v. *Support, Inc., supra,* 89 Cal.App.3d at pp. 694-698.) There is thus a strong and manifest policy, obviously adopted for the benefit of the public, to the effect that a county which provides public assistance to a mother and children shall have the right to reimbursement from the primary obligor, the father.

The record in this case indicates that since the year 1970, the County of Santa Clara has been furnishing aid to appellant's six children at a rate considerably in excess of the $250 per month specified in the final judgment of dissolution.[9] Mrs. Lugo therefore had no real incentive to contest appellant's modification motion in 1974. Because the amount of AFDC funds actually paid out was greater than the amount of support ordered in the final judgment, the County of Santa Clara is restricted at least in part to reimbursement of the lesser of the two amounts. (*County of Santa Barbara* v. *Flanders* (1976) 63 Cal.App.3d 486, 492.) ■ ■ If the doctrines of laches and equitable estoppel were applied to this case, quite obviously the public fisc would have no protection at all, and the manifest policy of reimbursement would be entirely frustrated. Accordingly, the trial court correctly ruled that the two doctrines are not available to appellant.

---

[9]As of January 30, 1980, the District Attorney was claiming arrearages in child support (based upon the final judgment of dissolution) in the amount of approximately $20,000. He represented to the court that the County of Santa Clara had paid out $48,000 in AFDC benefits to Mrs. Lugo and her children.

## Disposition

The order of the trial court is affirmed.

Panelli, P. J., and Agliano, J., concurred.