[No. B014488. Second Dist., Div. Three. Oct. 20, 1986.]

In re the Marriage of PAMELA and JOSEPH M. KELLEY.
PAMELA KELLEY, Respondent, v.
JOSEPH M. KELLEY, Appellant.

614

**COUNSEL**

Robert W. Gasper for Appellant.

Ira Reiner, District Attorney, Donald J. Kaplan and Sterling S. Suga, Deputy District Attorneys, for Respondent.

**OPINION**

**KLEIN, P. J.**—Appellant Joseph M. Kelley (Husband) appeals an order requiring him to pay child support arrearages to the County of Los Angeles (County) as the assignee of respondent Pamela Kelley (Wife).[1]

Because Wife did not conceal the whereabouts of the children, the County as her assignee is not estopped from collecting child support arrearages

---

[1] An order made after judgment is appealable under Code of Civil Procedure section 904.1, subdivision (b).

from Husband. However, even if there were concealment, the County is not estopped from collection because of the beneficial public policy requiring reimbursement.

### PROCEDURAL AND FACTUAL BACKGROUND[2]

Husband and Wife were married in Long Beach in 1971, and separated in January, 1972. Wife commenced dissolution proceedings in October 1976. While Husband was personally served, he never appeared in the action. A final judgment of dissolution was entered June 27, 1977, awarding Wife custody of the couple's two children and child support payments of $100 per month.

Sometime in 1984, the County served a copy of the judgment of dissolution on Husband and at the same time indicated Husband owed child support arrearages.[3] In response thereto, in January 1985, Husband filed an order to show cause in the dissolution action for establishment of arrearages. In the attached declaration, Husband claimed not to have seen his ex-wife and children for eight years, and only discovered the dissolution when he received the notification for support.

A hearing on the arrearages issue was held April 3, 1985. At the hearing, the district attorney, representing the County, appeared on behalf of Wife to collect the child support arrearages pursuant to Civil Code section 4702, subdivision (a).[4] Wife received aid to families with dependent children (AFDC) from the County intermittently from 1976 to 1982; Welfare and Institutions Code directs that as a consequence, any child support arrearages owed by the Husband, were owed to the County, not the Wife.[5]

---

[2]Because of conflicting dates used by the parties in their briefs, we refer to the documents in the superior court file for dates of significant events. Pursuant to California Rules of Court, rule 12(a), the record on appeal is augmented with the superior court file.

[3]This information was ascertained at oral argument, following inquiry by the court.

[4]In 1985, Civil Code section 4702, subdivision (a), provided in pertinent part: "[I]n any proceeding where a court makes or has made an order requiring payment of child support to a parent receiving welfare moneys for the maintenance of minor children, the court . . . shall direct the district attorney to appear on behalf of such welfare recipient in any proceeding to enforce such order." (See, e.g., *In re Marriage of Guardino* (1979) 95 Cal.App.3d 77, 84-86 [156 Cal.Rptr. 883].)

[5]Welfare and Institutions Code section 11477 provides in pertinent part: "As a condition of eligibility for aid paid under this chapter, each applicant or recipient shall: (a) Assign to the county any rights to support from any other person such applicant may have in their own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid, and which have accrued at the time such assignment is made. Receipt of public assistance under this chapter shall operate as an assignment by operation of law. An assignment of support rights to the county shall also constitute an assignment to the state. If support rights are assigned pursuant to this subdivision, the assignee may become an assignee of record by the district attorney or other public official filing with the court clerk an affidavit showing that an assignment has been made or that there has been an assignment by operation of law. This procedure does not limit any other means by which the assignee may become an assignee of record."

At the hearing, Wife testified to moving approximately six times between 1976 and 1985. Wife did not inform Husband of her new addresses because he "never came around." However, he did visit her in October 1978, to obtain a copy of the dissolution papers because he was contemplating remarrying. During most of her moves, Wife left forwarding addresses with the post office, and from 1977 to 1982, she maintained contact with Husband's mother.

Husband testified he did not know the whereabouts of Wife from 1976 to December 1984, and that he made efforts to locate her and his children through relatives without success. Relying on case law, he argued that because Wife had concealed the whereabouts of the children thereby frustrating his visitation rights, he was not liable for child support arrearages.[6]

On behalf of Wife, the County countered there had been no concealment, and even if Wife had interfered with Husband's visitation rights, he still owed a duty to support his children. Further, the County contended Wife's alleged concealment was not a defense as to the County and did not estop Husband's liability for the arrearages.

The trial court determined visitation rights, and found Wife was estopped from collecting child support arrearages from July 4, 1978 to March 5, 1985, because she had concealed the children's whereabouts.[7] It held the County was not barred from enforcing Wife's assignment of the arrearages as it was unaware of Wife's subsequent conduct.

The parties stipulated the amount of the arrearages under the child support order after the statutory assignment was $4,900. The trial court ordered Husband to pay the County $4,900 at the rate of $51 per month.

## CONTENTION

Husband contends the trial court erred in ordering him to pay the $4,900 in arrearages to the County because Wife is estopped from collecting; the assignee County "standing in her shoes" should likewise be estopped.

## DISCUSSION

1. *Husband is liable for $4,900 in child support arrearages to the County.*

a. *The trial court erred in finding concealment.*

Husband argues the County, as an assignee standing in the shoes of Wife, is estopped from collecting arrearages because of assignor Wife's estoppel based on her conduct of concealment.

---

[6]See *Szamocki* v. *Szamocki* (1975) 47 Cal.App.3d 812 [121 Cal.Rptr. 231]; *Kaminski* v. *Kaminski* (1970) 8 Cal.App.3d 563 [87 Cal.Rptr. 453]; and 1a, *post.*

[7]An automatic statutory assignment of Wife's child support rights occurred the moment she applied for AFDC, and Wife therefore no longer had any interest in the arrearages.

■ Preliminarily, based on this record, we conclude the trial court erred in holding the Wife concealed the whereabouts of the children from Husband because there was no substantial evidence to support such a finding. ■ Our ruling is made with awareness of the law that a judgment can be reversed for lack of substantial evidence only in the absence, or insubstantiality, of supporting evidence, as determined from a review of *all* related evidence in the record (*Rivard* v. *Board of Pension Commissioners* (1985) 164 Cal.App.3d 405, 413 [210 Cal.Rptr. 509].) ■ To be "substantial," the evidence must be reasonable, credible, and of solid value. (*Id.,* at pp. 409-410.)

■ At the hearing, Husband relied on the *Szamocki/Kaminski* cases which hold a custodial parent is estopped to enforce child support arrearages when he or she has concealed the children, frustrating the noncustodial parent's visiting rights. (*Szamocki* v. *Szamocki, supra,* 47 Cal.App.3d 812; *Kaminski* v. *Kaminski, supra,* 8 Cal.App.3d 563.)

However, a long line of cases has disapproved cancellation of child support obligations to punish a recalcitrant custodial parent, because such action is contrary to the best interests of the child. (*Ernst* v. *Ernst* (1963) 214 Cal.App.2d 174, 179 [29 Cal.Rptr. 478]; *Clarke* v. *Clarke* (1970) 4 Cal.App.3d 583, 589 [84 Cal.Rptr. 393]; *In re Marriage of Ciganovich* (1976) 61 Cal.App.3d 289, 294-295 [132 Cal.Rptr. 261]; *In re Marriage of Roesch* (1978) 83 Cal.App.3d 96, 103-104 [147 Cal.Rptr. 586]; *Moffat* v. *Moffat* (1980) 27 Cal.3d 645, 651 [165 Cal.Rptr. 877, 612 P.2d 967]; *In re Marriage of Anderson* (1981) 125 Cal.App.3d 553, 559 [178 Cal.Rptr. 117].)

In a clarifying measure enacted in 1980, Civil Code section 4382 (section 4382) now provides: "The existence or enforcement of a duty of support owed by a noncustodial parent for the support of a minor child shall *not* be affected by a failure or refusal by the custodial parent to implement any rights as to custody or visitation granted by a court to the noncustodial parent." (Italics added.)

*Solberg* v. *Wenker* (1985) 163 Cal.App.3d 475, 480 [209 Cal.Rptr. 545], attempted to reconcile section 4382 with the *Szamocki/Kaminski* cases by holding there is a difference between "'interference with visitation'" and "'concealment.'" While a custodial parent cannot play "hide-and-seek" with the noncustodial parent and then recover support payments for the time the custodial parent and the children's whereabouts were unknown, frustration of visitation rights can be enforced by less detrimental methods to the child's welfare than termination of child support. (*Solberg* v. *Wenker, supra,* at pp. 479-480.) These include termination of spousal support (*Clarke*

v. *Clarke, supra,* 4 Cal.App.3d at p. 589), a civil contempt proceeding (*Rosin* v. *Superior Court* (1960) 181 Cal.App.2d 486, 490-500 [5 Cal.Rptr. 421]), and a modification of a custody order (*In re Marriage of Ciganovich, supra,* 61 Cal.App.3d at pp. 294-295). (*In re Marriage of Anderson, supra,* 125 Cal.App.3d at p. 560.)

There was no substantial evidence that Wife attempted to conceal her own and the children's whereabouts. Admittedly, between 1976 and 1982, she made five moves. These moves may have frustrated Husband's visitation rights, but the moves without more do not indicate active concealment. Also, with the exception of the last one to Ramona, all the moves were within the Long Beach/South Bay area. This situation is factually very different from *Szamocki* and *Kaminski,* which both involved the custodial parent leaving the *state* with the child. (*Szamocki* v. *Szamocki, supra,* 47 Cal.App.3d at pp. 814-817; *Kaminski* v. *Kaminski, supra,* 8 Cal.App.3d at pp. 564-565.)

Here, there was no attempt to flee the state; instead Wife's moves were consistent with existing on the short rations of welfare, living hand to mouth, pillar to post.

Finally, there is no evidence that Husband made any attempt to locate Wife in order to avail himself of the appropriate remedies for frustration of visitation rights previously discussed in *In re Marriage of Anderson, supra,* 125 Cal.App.3d at page 560. Instead, the record indicates that from 1978 to 1984, Husband never seriously inquired into his children's whereabouts until the County sent a "Child Support Notification" and commenced a proceeding to collect the child support arrearages assigned to it by operation of law. Only then, in January 1985, did Husband initiate the instant order to show cause.

Based on the above discussion, we find no concealment by the Wife. Therefore, because Wife would not be estopped from collecting child support arrearages from Husband, her assignee, the County is likewise not estopped.

b. *Even if Wife were estopped, the innocent third party County is not.*

Husband contends Wife's assignment to the County merely transfers her interest. Thus, "[t]he assignee 'stands in the shoes' of the assignor, taking his rights and remedies subject to *any defenses* which the *obligor* has against the assignor prior to notice of the assignment." (1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 751, p. 628.)

■ The law cited by Husband concerns defenses existing *at the time* of the assignment. (See Code Civ. Proc., § 368.) Therefore, Husband's estoppel theory could only apply to the assignee County *if* assignor Wife's concealment behavior existed *prior* to the assignment. Here, apparently Wife first applied for AFDC in 1976; moreover, the trial court implicitly found the assignment was prior to the alleged concealment because it questioned whether the statutory assignment to the County should be affected by Wife's subsequent conduct.

The impairment of an assignee's rights by subsequent behavior of the assignor has been considered in the context of Welfare and Institutions Code, section 11477. *In re Marriage of Shore* (1977) 71 Cal.App.3d 290 [139 Cal.Rptr. 349], the court held a AFDC recipient parent who had assigned her child support arrearages by operation of law under section 11477 could not impair those rights by a subsequent assignment to a private collection agency. The *Shore* court reiterated "[i]t is, of course, well recognized that once a valid assignment has been made, the assignor cannot cancel or modify the completed assignment by unilateral action without the assent of the assignee, nor may he defeat or impair the rights of the assignee in any other way [citations]." (*Id.,* at p. 296; accord *County of Santa Clara* v. *Support, Inc.* (1979) 89 Cal.App.3d 687, 698 [152 Cal.Rptr. 754].)

■ Even if Wife had engaged in concealment prior to the assignments, it appears well settled that estoppel will not be applied to a public entity if to do so would effectively nullify a strong rule of policy adopted for the public benefit. (*County of Los Angeles* v. *Berk* (1980) 26 Cal.3d 201, 222 [161 Cal.Rptr. 742, 605 P.2d 381]; *City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 493 [91 Cal.Rptr. 23, 476 P.2d 423]; *County of San Diego* v. *Cal. Water etc. Co.* (1947) 30 Cal.2d 817, 829-830 [186 P.2d 124, 175 A.L.R. 747].)

In *In re Marriage of Lugo* (1985) 170 Cal.App.3d 427 [217 Cal.Rptr. 74], Santa Clara County, which had been providing AFDC to the wife/ mother on behalf of six children for several years, was found to be an indispensable party to a proceeding initiated in 1974 by the husband/father, wherein he obtained an order suspending his child support obligations while he was unemployed.

Five years later, the county placed a lien on the father's home to secure payment of all arrearages in child support on the theory that all rights to the support of the children had been assigned to the county pursuant to Welfare and Institutions Code, section 11477. On the father's motion to determine the amount owed, the trial court held the county could collect

the entire arrearages because the prior order the father obtained was null and void as the county was not notified.

The *Lugo* court affirmed, and citing to *Shore* and *County of Santa Clara,* held neither laches nor equitable estoppel barred the county's efforts to collect, due to the strong and manifest policy of protecting the public fisc. (*In re Marriage of Lugo, supra,* at p. 436.)

Thus, strong public policy requiring reimbursement for child support from a parent prevents the application of the estoppel doctrine, even if arguably applicable, to the County here.

DISPOSITION

The judgment is affirmed.

Lui, J., and Arabian, J., concurred.