[No. F007476. Fifth Dist., Nov. 20, 1987.]

STATE OF WASHINGTON ex rel. SUSAN JANE BURTON,
Plaintiff and Appellant, v.
JAMES JAY LEYSER, Defendant and Appellant.

**COUNSEL**

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, J. Robert Jibson, Cynthia G. Besemer and William G. Prahl, Deputy Attorneys General, for Plaintiff and Appellant.

W. Scott Quinlan for Defendant and Appellant.

**OPINION**

**WOOLPERT, Acting P. J.**—This appeal concerns the issue of whether a custodial parent who has concealed herself and her children from the noncustodial parent can recover child support arrearages accrued during the period of concealment, or whether she may be deemed to have waived her entitlement to arrearages or may be estopped to recover the arrearages. ■ We hold the circumstances in this case support the trial court's finding that appellant, the custodial parent, waived any right and was estopped to recover child support arrearages for the period of time she actively concealed herself and her children.

On November 13, 1984, the State of Washington filed a nonwelfare petition for child support in Fresno County on behalf of Susan Jane Burton (Susan) under the Revised Uniform Reciprocal Enforcement of Support Act (RURESA). The petition sought payment of current child support of $200 per month and accrued child support arrearages amounting to $10,250 as of October 3, 1984, from James Jay Leyser (James).[1] Hearings were held on the petition on January 31, 1986, and May 20, 1986. The Fresno County District Attorney's office represented Susan and the State of Washington. In its statement of decision issued May 28, 1986, the trial court found that Susan had waived and/or was estopped from collecting the accrued child support arrearages because she had concealed the children from James during the time period for which the arrearages were sought and current support was ordered. No judgment was entered.[2] Susan filed a timely notice of appeal.

---

[1] James filed a cross-appeal which he refers to in his brief as a "protective cross-appeal . . . ." That cross-appeal need not be resolved because the matter is affirmed.

[2] Included in James's opening brief is a motion to dismiss on the basis that Susan had failed to prepare and file a form of judgment as ordered by the trial court. On July 14, 1987, this court denied James's motion and ordered that the record be augmented to include a certified copy of the June 29, 1987, judgment on order to show cause entered nunc pro tunc to June 11, 1986.

## FACTS

James and Susan were married in 1966. Their first child, Victoria Lynn Leyser, was born January 1, 1968, and their second child, Brian Jay Leyser, was born February 23, 1972. The Leysers were divorced in 1979; Susan was awarded custody of the two children and James was awarded reasonable visitation. James was ordered to pay $25 per month in child support per child from March 1, 1979, until March 1, 1980; $50 per month per child for six months thereafter; $75 per month per child from September 1, 1980, to September 1, 1981, and thereafter, $100 per month per child, "continuing until further order of the court or stipulation of the parties, or until each said child reaches the age of majority, becomes self-supporting, emancipated or married." It was also ordered that upon receiving notice from Susan that James had fallen behind in payments by two months, the Family Support Division of the Madera County District Attorney's office "shall receive and enforce said child support payments."

Apparently James failed to make payments in 1979, and Susan applied for and received public assistance in Madera. James was brought into court by the Madera County District Attorney and was ordered to pay $50 per month to the district attorney's office until the county had been reimbursed for the amounts which it had paid to Susan in public assistance. Child support payments to Susan were suspended until the arrearages were paid. Payments to Susan were to resume in August of 1981.

James exercised his visitation rights every other weekend until August of 1981. Upon returning the children from a weekend visitation in August, Susan informed James that she and the children were moving with her new husband, Arthur Burton, to somewhere around the Oregon-Washington border. James did not object and told Susan to let him know where they had settled. Susan asked when he would resume making child support payments to her; James stated he was not certain, but she should contact him when she was settled. The next day the children called to say goodby and James told them to write down his address and telephone number. Susan said she would contact James when she was settled. Despite Susan's assurance, James did not learn of their location until he was served with the RURESA petition in 1985.

Susan moved to Vancouver, Washington. She never informed James of her new residence. Instead, she maintained an unlisted telephone number, and enrolled the children in school under the last name of "Burton." Susan admitted she concealed herself and the children from James because the

children did not want to contact him and because he had beaten her in the distant past.[3]

James could not afford to hire a private investigator. He tried to contact Susan's father in Canada, but his letters were returned marked "No longer at this address." He contacted the Spooner family with whom he and Susan had been friends during their marriage, but although Susan had told them where she could be contacted, he was unable to find out where Susan and the children were. He also tried to contact Arthur Burton's ex-wife, but was unable to do so. James did not know her first name. Although James moved twice after the divorce, he always maintained a listing in the Fresno telephone directory. The attorneys who had represented James during his divorce from Susan remained at the same address. They were never contacted by Susan, nor was the Madera County District Attorney ever contacted regarding child support arrearages.

The oldest child, Victoria, turned 18 in January 1986, and soon thereafter left her mother's home in Washington. Susan does not know where Victoria went.

## DISCUSSION

In finding that Susan was not entitled to child support arrearages accrued between 1979 and 1985, the trial court relied upon three theories: (1) Susan had waived her right to enforce the child support order; (2) she was estopped to enforce the child support order; and (3) concealment is a defense to a RURESA action for child support arrearages.

Susan's contention on appeal is twofold. First, she contends her conduct does not constitute a defense to her action under RURESA and, second, the finding of concealment is not supported by substantial evidence.

■ The task of this court is to determine whether the judgment is correct upon any theory of law, regardless of the consideration which may have moved the trial court to its conclusion. (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10].) ■ In this case we need not address the issue of whether there is substantial evidence of concealment or whether "concealment" is a distinct defense to an action for child support arrearages under RURESA. Both waiver and

---

[3] James admits that during their married life he and Susan became intoxicated and engaged in "fisticuffs."

estoppel are valid defenses to a RURESA action for child support arrearages and there is substantial evidence to support the findings of both.

The trial court relied upon *Szamocki* v. *Szamocki* (1975) 47 Cal.App.3d 812 [121 Cal.Rptr. 231], and *In re Marriage of Daves* (1982) 136 Cal.App.3d 7 [185 Cal.Rptr. 770], to find waiver and estoppel in the present case. In *Szamocki,* the mother had left California with her child, without any notice to the father who was responsible for child support payments. She told her neighbors and the real estate agent with whom her house was listed that she did not want her whereabouts disclosed. Two years later, the father was served with notice of a writ of execution seeking $3,025 in child support arrearages. The court found both waiver and estoppel, and held the mother could not recover arrearages for the time of her concealment. "Based on all the circumstances, respondent was justified in assuming that appellant wanted no further contact with him nor any further support payments from him. In the absence of some indication that she desired further support payments, he was not required to track her down in order to press that money upon her." (*Szamocki, supra,* at p. 820.)

The *Szamocki* court based its holding upon *Kaminski* v. *Kaminski* (1970) 8 Cal.App.3d 563 [87 Cal.Rptr. 453], in which it was held a mother who had denied the father his right to visitation and made the statement, "I don't want anything from you," waived any right and/or was estopped to make any claim to child support arrearages. (*Id.* at p. 568.)

In *In re Marriage of Daves, supra,* 136 Cal.App.3d 7, the mother left California with the children without telling the father or leaving a forwarding address. The father was unsuccessful in his attempts to find them. Eight years later, the mother sought reimbursement for arrearages by a writ of execution which the father successfully quashed. The appellate court affirmed the judgment and held that the mother was estopped to recover child support payments for the period of time she concealed her whereabouts. (*Id.* at p. 10.)

Appellant contends the foregoing cases conflict with established case law, including Supreme Court precedent as set forth in *Moffat* v. *Moffat* (1980) 27 Cal.3d 645 [165 Cal.Rptr. 877, 612 P.2d 967], and statutes directly on point.

The first statute relied upon by appellant is Code of Civil Procedure section 1694, which is contained in California's RURESA and provides in pertinent part: "The determination or enforcement of a duty of support owed to one obligee is unaffected by any interference by another obligee with rights of custody or visitation granted by a court."

The second statute is Civil Code section 4382, which provides: "The existence or enforcement of a duty of support owed by a noncustodial parent for the support of a minor child shall not be affected by a failure or refusal by the custodial parent to implement any rights as to custody or visitation granted by a court to the noncustodial parent."

In *Moffat,* the Supreme Court held pursuant to Code of Civil Procedure section 1694, the denial of visitation rights did not establish a defense to a RURESA action to enforce a child support order. The court rejected the father's theory of estoppel and stated: "Regardless of whether we may view this as an unjust result from the noncustodial parent's point of view, in such circumstances the child's need for sustenance must be the paramount consideration." (*Moffat* v. *Moffat, supra,* 27 Cal.3d at p. 651.)

Significantly, however, Mrs. Moffat continuously sought to enforce the payment of child support while Mr. Moffat sought to terminate child support. The issue of an entitlement to reimbursement for belatedly claimed arrearages was not addressed. In addition, while Mrs. Moffat prevented Mr. Moffat from exercising visitation with the child, she did not leave the state and purposely make it difficult to find her.

We agree the principal concern in litigating the right to current and future child support is the welfare of the child. However, when past unpaid support is the issue, the welfare of the child may not be involved. For example, in this case reimbursement to the mother will have no tangible effect on Victoria, whose location is unknown. ■ Quite different considerations would be present if a public agency had provided support for the benefit of the children and was seeking reinbursement. A public agency cannot be estopped because of the conduct of the parents. (*In re Marriage of Kelley* (1986) 186 Cal.App.3d 613, 620-621 [231 Cal.Rptr. 6].) ■ Also, if the *ongoing* support of the child is at issue, our high court in *Moffat* and the Legislature by its enactments on the subject, have made it clear the *child's* right to sustenance must remain free of the disputes or express or implied agreements of the parents.

Appellant cites to several other cases for the proposition denial of visitation, even to the extent of concealment, is not a defense to her action for child support arrearages. (*In re Marriage of Kelley, supra,* 186 Cal.App.3d 613; *In re Marriage of Anderson* (1981) 125 Cal.App.3d 553 [178 Cal.Rptr. 117]; *In re Marriage of Roesch* (1978) 83 Cal.App.3d 96 [147 Cal.Rptr. 586]; *In re Marriage of Ciganovich* (1976) 61 Cal.App.3d 289 [132 Cal.Rptr. 261]; *Clarke* v. *Clarke* (1970) 4 Cal.App.3d 583 [84 Cal.Rptr. 393]; *Ernst* v. *Ernst* (1963) 214 Cal.App.2d 174 [29 Cal.Rptr. 478].) With the exception of *In re Marriage of Anderson,* the foregoing cases are easily distinguished from the present case.

*In re Marriage of Kelley, supra,* 186 Cal.App.3d 613, involved an action by the County of Los Angeles as the mother's assignee to recover child support arrearages as reimbursement for sums expended by the county for public assistance to the mother and children. The court found no substantial evidence of concealment and held further, even if she had concealed herself and the children from the father, estoppel was not a valid defense to the county's action because to do so would effectively nullify a strong rule of policy adopted for the public benefit—to protect the public fisc. (*Id.* at pp. 620-621; see also *Carr* v. *Marshman* (1983) 147 Cal.App.3d 1117, 1123 [195 Cal.Rptr. 603].) The holding in *In re Kelley* does not rule out the possible application of the estoppel defense in a custodial parent's action for reimbursement.

The father in *In re Marriage of Ciganovich, supra,* 61 Cal.App.3d 289, did not raise waiver or estoppel as defenses to the mother's action for child support arrearages, but instead relied upon the mother's frustration of visitation. Indeed, throughout the time the mother played hide-and-seek with the children, she continued to press the father for child support. In the present case, Susan did not assert her right to child support until three years after she had disappeared. As in the case of *In re Kelley, Ciganovich* does not address whether waiver and estoppel are valid defenses to a custodial parent's action for accrued child support arrearages.

In *In re Marriage of Anderson, supra,* 125 Cal.App.3d 553, the court addressed the issue of waiver in dictum. Although unnecessary to its opinion, the court stated: "[D]enial or frustration of visitation rights does not justify termination or reduction of child support payments. Therefore, by analogy, it will not justify a denial of wage or salary assignment where payments are in arrears." (*Id.* at p. 559.)

In our opinion the foregoing analogy made by *Anderson* does not withstand scrutiny. There is a proper distinction between ongoing interference with visitation which is subject to litigation and relief, and past conduct amounting to waiver and/or estoppel of prior support.[4] (See *In re Marriage of Daves, supra,* 136 Cal.App.3d at p. 10.) (". . . Phillip's motion to quash the writ of execution was based not on Charlene's denying him visitation rights but rather on her not contacting him for more than eight years while secreting the children from him.")

██ When there is interference with visitation, the noncustodial parent has several alternative remedies available: he or she can obtain an order of

---

[4] This court has stated in a different context, that interference with visitation is not a valid defense to a RURESA action to enforce child support payments. (*In re Marriage of Ryall* (1984) 154 Cal.App.3d 743, 754 [201 Cal.Rptr. 504].)

contempt, an order terminating or reducing spousal support, an order changing custody, or a bond to assure compliance with visitation orders. (*Solberg* v. *Wenker* (1985) 163 Cal.App.3d 475, 480 [209 Cal.Rptr. 545].) However appropriate these remedies may be when the parties remain in the state and amenable to service of process, practical difficulties arise when one party is making purposeful efforts to "hide." (*Albrecht* v. *Superior Court* (1982) 132 Cal.App.3d 612 [183 Cal.Rptr. 417].) "A noncustodial parent who cannot *find* his or her ex-spouse and children cannot take advantage of these remedies. We think that that difference requires a distinction between 'interference with visitation' and 'concealment.' 'Appellant cannot play hide-and-seek with respondent and then recover support payments for that period of time during which she successfully kept her and the children's whereabouts unknown to him.' [Citation.]" (*Solberg* v. *Wenker, supra,* 163 Cal.App.3d at p. 480, italics in original.)

Susan suggests many ways by which James could have located her; he could have filed a missing persons report or asked the district attorney to help.[5] However, based on sufficient evidence, the trial court found James had acted reasonably; we cannot find to the contrary.

Furthermore, the parties provided in their divorce decree a purportedly adequate way to assure continued support payments. Susan could have notified the Family Support Division that James had fallen behind two months in providing support. Presumably, enforcement would be attempted without cost to Susan. Although the enforcement provision in the decree may have added little of legal significance, it did suggest to each party that if Susan could not or would not discuss ongoing support obligations, she had someone available who would speak and act on her behalf. In fact, while Susan was still in the area she made use of the Family Support Division to collect arrearages. She was well aware of this enforcement procedure. However, when Susan left the area and purposely freed herself and the children from all further contact with James, she decided against using this suitable method of enforcement.

We are not impressed when Susan argues that James should have been more energetic in finding her in light of her failure to pursue the agreed method for collecting overdue support payments and her active concealment of herself and the children. It appears Susan either elected to provide the children their total support, and did so, or sacrificed financially in order to exclude James from their life.[6]

---

[5] Compare this assertion against the lack of success Mr. Solberg had when he was the object of a RURESA action and asked the district attorney to locate his children. (*Solberg, supra,* at p. 478.)

[6] The only justification offered by Susan for hiding was that James had physically abused her. However, that abuse took place many years earlier and there is no evidence that she or

■ Waiver is the intentional relinquishment of a known right. (7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, § 133, p. 5353.) The elements of waiver are set forth more specifically in *Outboard Marine Corp.* v. *Superior Court* (1975) 52 Cal.App.3d 30 [124 Cal.Rptr. 852], as follows: "To constitute waiver, it is essential that there be an existing right, benefit, or advantage, a knowledge, actual or constructive, of its existence, and an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that it has been relinquished." (*Id.* at p. 41.)

■ Estoppel by conduct is very similar and is found when one person intentionally and deliberately leads another to believe that a particular thing is true and to act upon such belief. (*Baillargeon* v. *Department of Water & Power* (1977) 69 Cal.App.3d 670, 678-679 [138 Cal.Rptr. 338]; 7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, § 132, p. 5351.)

Aside from arguing she did not conceal herself or the children, Susan does not challenge the trial court's finding that she did not contact James after leaving the state, or make her whereabouts known to him. In this factual context, it was not unreasonable for the trial court to conclude her conduct was inconsistent with her right to reimbursement for sums she expended to support the children during that time. Nor was it unreasonable to conclude she induced James to believe she would not claim child support for that period of time. There is substantial evidence to support the judgment.

The judgment is affirmed; respondent, James Jay Leyser, is awarded costs on appeal.

Ballantyne, J., and Stone, J.,* concurred.

---

the children were exposed to abuse after their separation. James exercised visitation with the children for several years prior to Susan's move to Vancouver, without complaint.
 * Assigned by the Chairperson of the Judicial Council.